EDWARD A. PERRY, GOVERNOR, APPELLANT, VS. J. M. WOODBERRY, APPELLEE.

1. The act of February 27, 1877, section 6, p. 323, McClellan's Digest, by which the County Treasurers of the several counties were "constituted the treasurers of the School Funds in their respective counties," did not create a new county office of treasurer of the School Funds to be filled by whomsoever might be County Treasurer, but it transferred to the office of County Treasurer the duties and responsibilities of the custody of the School Funds of the county.

2. The act of February 18, 1873, section 5, p. 323, McClellan's Digest, provided that County Treasurers should be required to give bonds to the Governor in a sum to be fixed by the County Commissioners, and to be in no county less than double the amount of money that might at any one time come into the treasurer's hands, and a treasurer's bond executed under it after the approval of the act of February 27, 1877, by which County Treasurers were constituted treasurers of the School Funds, section 6, p. 323, McClellan's Digest, became a security as well for the proper performance of his duties in connection with School Funds as with any other funds of which he might be the legal custodian under former or other legislation.

3. It was the duty of the County Commissioners when fixing the amount of the official bond to be given by a County Treasurer, after the approval of the act making him treasurer of the School Funds, to consider the effect of that act with reference to the amount of money which might at any one time come into his hands.

4. An action on the official bond of a County Treasurer, payable to the Governor, held to be properly brought in the name of the Governor for the use of the Board of Public Instruction of the county to recover for school moneys as to which the County Treasurer failed to properly account, and that the action should not have been brought for the use of the successor of the delinquent County Treasurer.

5. The fact that certain officers when fixing the amount of the penalty of an official bond failed to consider a certain matter which, had they considered it, might have caused them to fix a larger penalty than they did, is not a defense to an action against a surety on the bond.

6. A statement in a plea to an action on complete written contract that the contract was not intended to cover the moneys sued for, and that the defendant, a surety, signed the contract with that understanding and belief, is not the averment of a fact, but of a conclusion of law, and is demurrable.

7. In an action instituted in the name of the Governor for the use of a Board of Public Instruction on the official bond of a County Treasurer to recover for school moneys as to which he was in default, the bond having been executed April 14, 1884, and being conditioned that the County Treasurer should render a faithful account of all moneys that might come into his possession or custody by virtue of his said office and faithfully perform all the duties of the office as prescribed by law, a plea was interposed by a surety to the effect that the County Commissioners did not in fixing the amount of the bond take into consideration any school moneys that might be paid to the principal as County Treasurer of the county, but fixed the amount to cover moneys only which were controlled by the County Commissioners; and that said bond was not intended to cover any school moneys which were subject to the control of the Board of Public Instruction of the county, and that the surety signed the bond with that understanding and belief: *Held*, that the plea is demurrable for the reason that the result

of the neglect of the Commissioners to consider the school moneys could be nothing more than to make the amount of the bond less than it should have been, and this does not harm the surety; and the remainder of the plea is not the averment of a fact, but is nothing more than the assertion of a conclusion of law of pleader's construction of a complete written contract, which contract is the sole repository of the language of the parties to it as to their meaning and intentions, which language viewed in the light of the law controlling the subject of the contract at the time of its execution shows that school moneys subject to the control of the Board of Public Instruction were within the intention of the parties to the bond, and must control the courts as to the meaning, intention and understanding of the parties.

Appeal from the Circuit Court for Gadsden County.

The facts of the case are stated in the opinion.

*Blount & Blount*, for Appellant.

*John W. Malone*, for Appellee.

RANEY, C. J.:   This is an action on the official bond of A. W. Smith, as County Treasurer of Gadsden County, executed by him and sureties thereon, of whom appellee was one, April 14, 1884.   The bond, which was approved by the County Commissioners, binds the parties " unto the Governor of the State of Florida," and its condition, including the recital, is :   That whereas the said ·Smith is about to be commissioned by the Governor, County Treasurer in and for the county aforesaid, to hold his office for the term of two years, now if Smith shall render a correct and faithful account of all moneys that may come into his possession or custody by virtue of the office, and faithfully perform all the duties thereof as prescribed by law, the bond shall be void, but otherwise to remain of full force and effect.

The action as originally instituted in the year 1886, was in the name of " the Governor of the State of Florida, for

the use of the Board of Public Instruction of Gadsden County." Subsequently the proceedings were amended by making E. A. Perry, Governor, etc., for the use, etc., the plaintiff. Polk vs. Plummer, 2 Hump., 500; Stephens vs. Crawford, 1 Ga., 574; Teves vs. Randall, 6 Col., 632-37, A. D.

The original declaration alleges that Smith was removed from office by the Governor in the year A. D., 1886, and that while he was such Treasurer he did not render a correct account of and pay over all moneys which came into his possession or custody by virtue of his said office, nor did he faithfully perform the duties of his office, but on the contrary, has failed and refused, and still fails and refuses to account for and to pay over to the Board of Public Instruction of Gadsden County the sum of $1,082.84⅓ of the property of the said board which came into his possession by virtue of the office, and which by law was and is payable to such board.

The plaintiff demurred to the fourth plea as bad in substance, and the demurrer having been overruled he suffered final judgment to be entered in the case against him, from which judgment he has taken an appeal.

This plea, upon which the result of the litigation as it stands before us depends to a certain extent, is in substance as follows: The County Commissioners of Gadsden County did not, in fixing the amount of the bond, take into consideration any school moneys that might be paid to Smith, as County Treasurer of the county, but fixed the amount of the bond to cover moneys only which were controlled by said County Commissioners, and said bond was not intended to cover any school moneys which was subject to the control of the Board of Public Instruction; and the defendant signed the bond with that understanding and belief.

The statute of February 27, 1877. Section 6, p. 323, Mc-
Clellan's Digest, enacted that the County Treasurers of the
several counties in this State shall be and the same are here-
by constituted the treasurers of the School Funds in their
respective counties.

Legislation approved February 18, 1873, Section 5, p.
323 McClellan's Digest, provided that County Treasurers
should be required to give bonds to the Governor in a sum
to be fixed by the County Commissioners, and to be in no
county less than double the amount of money that might
at any one time come into the treasurer's hands; and that
the sureties should be required to justify. A previous act
of 1872, Section 5 of Chapter 1883, had provided that the
amount of the bond should be fixed by the County Com-
missioners, and never be less than ten thousand dollars.
The provision of Chapter 1722, approved June 22, 1869,
referred to by counsel for appellant, and requiring that
"every school officer" shall before receiving any moneys or
property of any kind for safe-keeping or disbursement, give
bonds with two good sureties for double the amount that
would be liable to fall in his hands at any one time, the bond
to be fixed by the Board of Public Instruction and approved
by the County Commissioners, was not applicable to the
County Treasurer prior to the act of 1877, nor did it become
so upon the passage of the latter act.

The legislation of 1877 did not repeal that of February,
1873, but one effect of it was to make it the duty of the
County Commissioners, when fixing the amount of a treas-
urer's bond, to consider its effect with reference to the
amount of money which might at any one time come into
that officer's hands, and to act accordingly. It was also the
effect of these two statutes, considered together, that a
treasurer's bond executed like this one after the act of 1877,

should be a security as well for the proper performance of his duties in connection with school funds as with any other funds of which he might be the legal custodian under former or other legislation. The act of 1877 did not create a new office of treasurer of the School Funds to be filled by whomsoever might be County Treasurer, nor was it by virtue of any such distinct office that he was entitled to receive school funds, but it transferred and imposed upon the office of County Treasurer, as then constituted by law the duties and responsibilities of the custody of the school funds of the county, and a proper performance of these is as much within the language and purpose of the bond before us as are any duties which had been imposed upon or had appertained to the officer prior to that legislation. The School Law of 1869 and its amendments had prac-tically created a distinct custodian or treasurer of the School Funds of the county, and the purpose of the legislation of 1877 was to confer the duties upon the constitutional office of County Treasurer.

It is averred by the plea that the County Commissioners did not, in fixing the amount of the bond, take into consideration any school moneys that might be paid to the treasurer, but fixed the amount of the bond only to cover moneys which were controlled by themselves, the County Commissioners. So far then it seems only that they may not have fixed the amount of the bond as large as they should have done. From this omission to regard what the law had made a subject for their consideration, and the consequent neglect of duty, the surety can claim no advantage. His complaint to this point is nothing more than that the penalty of the bond is not as large as it should have been. That does not hurt him.

The plea further asserts that the bond was not intended

to cover any school moneys which were subject to the control of the Board of Public Instruction, and that with this understanding and belief the appellee, a surety, executed it. Considering this assertion either alone or in connection with the previous part of the plea, we find neither in it, or elsewhere in the record, any pretense that any other written instrument was executed as a component part of the contract and qualifying the meaning or effect of the bond. The bond is upon its face a full and complete written contract, having no feature to suggest that it was not understood and intended by all the parties to it, as the complete expression of their meaning and intention, and the sole repository of the language of their undertaking. When parties deliberately put their engagement into writing in such terms as import a legal obligation without any uncertainty as to the object or extent of the engagement, it is, as between them, conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing, and all oral testimony of any previous colloquium between them, or of any conversation or declaration at the time of its execution, or afterwards, will be excluded, as their admission in evidence would tend in many instances to substitute a new and different contract from what was really agreed upon. 1 Greenleaf on Evidence, Section 275. The instrument is the best possible evidence of their intent and meaning, because it is their own statement of what they do mean and intend at the time. No other language is admissable to show what they meant or intended, and for the simple reason that each of them has made that to be found in the instrument the agreed test, his meaning and intention. *Ibid*, Section 276, 277, 279, 282.

The written instrument before us is not a mere memo-

randum, or at all incomplete; *Ibid*, 284, a; nor is there any uncertainty as to the object or the extent of its engagements. According to the terms of the bond the sureties were to be liable for all moneys which might come into Smith's possession or custody by virtue of his office as County Treasurer, and for which he should not correctly and faithfully account, and for a faithful performance of all the duties of that office. Looking at the bond, which is the full expression of the meaning of the parties, we find that such was their intention when the obligors executed it; and under the law the moneys sued for, moneys which were under the control of the Board of Public Instruction to the extent of their application to the educational purposes prescribed by law, are within that intention, for they came into his possession by virtue of the stated office. Turning to the plea we find in it an attempt to limit the compass of the liability expressed in the bond, by an assertion that the moneys in question were not within the intention of the parties. This assertion is nothing more or less than the pleader's construction of the bond, an averment of a conclusion of law which the terms of that instrument refute, and not the presentation of any substantive fact that can be considered in connection with the bond as qualifying its plain legal effect. The bond is the contract, and the appellee must abide by it. The pleadings admit by implication, as effectually as if it were explicitly stated, that there was no other written instrument executed as a part of the contract; and this being so, and the bond being a full and complete contract, and parol evidence not being admissible, the result is, that the proposition presented by the pleadings is simply one of the meaning and effect of the undertaking contained in the bond.

The language of the bond is to be interpreted by the law

as it stood at the time, and though sureties may stand upon the strict language so interpreted, they cannot say they did not intend or mean what the law says the undertaking of their bond is.   If this was not so, bonds would be of no value, for they would not be the final expression of the obligation of the parties, but the sport of each party's understanding and recollection of what they were intended.  Miller vs. Elliott, 1 Ind., 484; Booske vs. Gulf Ice Co., 24 Fla., 550; Debrell vs. Miller, 8 Yerg., 476; S. C. 29 Am. Dec., 126. It is urged that the contract set up in the plea is not different from that in the bond, but explanatory, and that for this reason, the principle of law invoked by us, and maintained in Miller vs. Elliott, and other authorities, does not apply. If explanatory, it is so in the sense that it proposes to take out of the bond that which is clearly within the legal effect of its terms; or, as may be said, to explain the bond away, and thus make a different contract from that which appears upon its face.

The plea admits that the moneys in question are school moneys, and that they are subject to the control of the Board of Public Instruction, and the law makes the County Treasurer the custodian of all school moneys of the county, and by Section 25, p. 907 McClellan's Digest, the Board of Public Instruction was given the charge, oversight and management of the common school moneys with a view to their just distribution and use, and hence it follows as a necessary consequence that the sureties are liable upon the strict terms of the bond for any default of the treasurer as to such funds.

II. What has been said above is upon the assumption that the declaration is not open to the objection of appellee that the action should have been for the use of the County Treasurer, instead of for the use of the Board of Public

Instruction. Contending as he does that the declaration and entire action are thus defective he claims upon former decisions of this Court that the demurrer reaches back to the declaration, and asks judgment upon it. Johnson vs. Pensacola & Perdido Railroad Company, 16 Fla., 623; Doyle vs. Wade, 17 Fla., 522; Price vs. Drew, 18 Fla., 670.

The argument of counsel is upon the theory that the successor to Smith in the office of County Treasurer is, if there can be any recovery on the bond, entitled to the possession of the money, and therefore, he, and not the Board of Public Instruction, is the party for whose use the action should have been brought.

The solution of this question involves the consideration of the character of the relation of the Board of Public Instruction and of the County Treasurer respectively, to the school moneys.

The general school law of 1869, Chapter 1686, provided in effect that the officers of the Department of Public Instruction should be, in addition to those prescribed by the Constitution, a Board of Public Instruction for each county, local school trustees, treasurers and agents. Section 9, p. 905 McClellan's Digest.

It made each board of Public Instruction a body corporate and authorized it to acquire and hold real and personal estate, receive bequests and donations and perform other corporate acts for educational purposes, Section 14; and by the subsequent section, provided that the title of the school property of the county should be vested in them and their successors in office. Section 20 and 21, p. 906 *et seq*. McClellan's Digest.

In addition to authorizing and directing the Board of Public Instruction to obtain possession of, accept and hold under proper title as a corporation all property possessed,

acquired or held by the county for educational purpose, and to manage and dispose of the same for the best interests of education, it gave it charge, oversight and management of the common school moneys with a view to their just distribution and use, and made it their duty to locate and maintain schools, audit and pay the just accounts of teachers and other persons and to keep accurate accounts of all moneys received, held or disbursed, and gave them full power to perform all acts reasonable and necessary for the promotion of the educational interest of the county.   Sections 25 and 27, pp. 907, 908 McClellan's Digest.

The ninth section of the same law provided, in its second paragraph, that every school officer should before receiving any school moneys or property for safe-keeping or disbursement, give bonds with two good sureties for double the amount that would be liable to fall into his hands at any one time; and, by its third paragraph, that "any officer in charge of school moneys or property to be so disbursed shall satisfy himself that the officer to whom he issued it is duly assured, or be personally liable for any loss in consequence of such neglect."

Although that statute contemplated "treasurers" as among the officers of the school department, it nowhere expressly designated by such name a treasurer of the county school funds or of the Board of Public Instruction; and, whether the effect of the statute was that the board or that some member of it, or other person, by its appointment should act as treasurer, still neither the board as such, nor any member or other appointee could receive any money or other property of the kind contemplated by the ninth section (Section 17, p. 906 McClellan's Digest) for safe-keeping or distribution without having given the bond required by that section.

The purpose of the act of 1877 was to simply make the County Treasurer in each county the custodian of moneys or other school property requiring safe-keeping; or, in other words, to devolve upon that officer the custody of such property as could not before its adoption have been received by any school officer without having given the bond referred to. The title to any school moneys which have been received by the County Treasurer is in the Board of Public Instruction, and they are subject to its management and control as to disbursement for school purposes, to which is alone applicable, just the same as they would have been if the act of 1877 had never been passed and the same moneys were in the actual custody of the Board of Public Instruction, or of any one of its members or other appointee of it, after having given the bond mentioned above. The physical custody and responsibility for the safe-keeping of certain public property, the title and management of which to the end of its legal and just distribution and use are in one public corporate body composed of certain officers, has been given to another officer. It is the duty of the County Treasurer to receive school funds and safely keep them, and to keep correct accounts of them, and to make the reports required by law. McClellan's Digest, p. 323; and in his hands they are subject to the orders of the board for school purposes. Section 25, p. 907. A County Treasurer who has misapplied county school funds committed to his custody or has otherwise become liable for such funds is not a debtor to his successor in office; but for the legislation referred to above he would be simply the debtor to the county in its corporate name and capacity, but this legislation having vested the legal title to such funds actually held by a County Treasurer in the board, in trust of course for the body politic of the county, and given

it the powers indicated above, the debt arising from a defalcation or other breach of official duty is due to the board as such trustee, and the action lies for its use in the name of the obligee in the bond, who, in the case before us is the Governor. The default of the treasurer is the breach of duty to the board in its official representative capacity. Murfree on Official Bonds, Sections 468, 475.

It was held in Hunnicutt vs. Kirkpatrick, 39 Ark., 172, that the action could be maintained either in the name of the County Treasurer, as the real party in interest, or in the name of the State, the obligee in the bond, as trustee of an express trust; nevertheless we are satisfied that the Board of Public Instruction, and not the County Treasurer, is the real party in interest, in its public representative capacity for the purposes of such an action under our statutory system controlling the powers and duties of these officers. That the action might have been maintained under Section 72, p. 829 McClellan's Digest, without joining the board, we do not deny. That section provides that a person in whose name a contract is made for the benefit of another may sue without joining with him the person for whose benefit the action is prosecuted, but this provision does not prevent joining with him the person for whose benefit the suit is instituted, and consequently there was no error in joining the Board of Public Instruction as has been done in this case, in accordance with a well established practice in Florida that action on the official bonds of revenue and other financial officers.

The fact that payments on account of a claim of this character should ultimately be made to the County Treasurer is not a conclusive reason why the suit should be by him. They should be made to him because the law has made him the sole legal custodian of the school moneys,

subject, however, to the rights and powers which the law has given the board, and it was competent for the law to do this without doing more.

Our conclusion being that the Circuit Court erred in overruling the demurrer to the fourth plea, the judgment should be reversed and the cause remanded for further proceedings not inconsistent with this opinion, and it will be so ordered.