CANAL LUMBER COMPANY, A CORPORATION, AND JOHN N. C.
  STOCKTON IN THEIR OWN NAME AND IN THE NAME OF
  MORGAN V. Gress, MORGAN LUMBER COMPANY, A COR-
  PORATION, BLANCHE D. RENTZ AS ADMINISTRATRIX OF
  THE ESTATE OF J. A. RENTZ, DECEASED, JOHN H. PITTS,
  W. P. SMITH AND B. B. BROWN, *Appellants*. v. FLORIDA
  NAVAL STORES AND MANUFACTURING COMPANY, A COR-
  PORATION, *Appellee*.

## Opinion Filed April 8, 1922.

1. In construing a contract it is not enough to look to an
   isolated˙ phrase or paragraph of. the contract. The intent of
   the parties with respect to any feature of the contract must
   be determined from an examination of the whole of the
   contract.

2. Where a contract expressly provides that it is subject to
   the terms and conditions of other contracts which are clearly .
   designated, such other contracts must be considered in
   detetrmining the intent of the parties to the transaction.

3. The primary consideration in the construction of a con-
   tract is the intention of the parties thereto, and this inten-
   tion must be gathered from an examination of the whole
   instrument, which must be so construed as to render all its
   provisions consistent and harmonious, if this can be done.

4. If matter contained in an answer in a chancery cause is
   relevant and can have any influence upon the decision of
   the subject matter of the controversy, it is not impertinent
   and will not be stricken.

. An Appeal from the Circuit Court for Duval· County;
Daniel A. Simmons, Judge.

Reversed.        .

*George C. Bedell, William T. Stockton* and *Herman Ulmer,* for Appellants;

*Haley & Heintz* and *Herbert L. Anderson,* for Appellee.

WEST, J.—This appeal brings to this court for review one question only, namely: The propriety of the ruling of the chancellor striking, upon motion of complainant, one paragraph of the joint and several answer of defendants Canal Lumber Company and Stockton, Smith and Brown to the amended bill of complaint. Prior to this ruling the court, in passing upon a demurrer to the bill, construed it to be a bill for the foreclosure of a vendor's lien upon the property described and, so construing it, overruled the demurrer. The defendants named are the only ones contesting the suit. It is recited in the record that one other defendant answered, but his answer is not contained in the record. Decrees *pro confesso* for failure to appear or interpose any defense were entered against the other defendants. After the taking of testimony, reported by a special examiner, the court, upon consideration of the case, entered final decree of foreclosure of the lien in accordance with the prayer of the bill. From this decree an appeal was taken to this court.

The error assigned is the ruling of the court granting the motion of complainant to strike a part of the third paragraph of the answer of defendants Canal Lumber Company and Stockton, Smith and Brown to the amended bill of complaint.

The contract sued upon is one made on the 15th day of July, A. D. 1918, between Florida Naval Stores and Manufacturing Company, a corporation, and J. A. Rentz

for the sale of certain timber, stumpage rights and other property upon certain lands described in the contract.

The provision of the contract sued on which is the basis of the controversy and upon which the decision turns, is that describing the property conveyed or to be conveyed by complainant to defendant Rentz upon his compliance with the terms and conditions of the contract. By this provision the complainant, "upon the compliance by the said J. A. Rentz of all the terms, stipulations, conditions and agreements herein contained," agrees to "sell and convey to the said J. A. Rentz (1) without warranty all of the stumpage coming within the terms of the aforesaid agreement of October 1, 1909, and the supplement thereto dated December 11, 1917, now available for logging and milling purposes subject, however, to all the terms and conditions of the said contract of January 30, 1917."

The "aforesaid agreement of October 1, 1909" referred to is an agreement under which a predecessor in title of complainant acquired his interest in the property conveyed. The supplement dated December 11, 1917, is to this contract and, while it asserts that it is not to be construed as changing the original contract, it does contain slight modifications of it. The contract "of January 30, 1917," referred to, subject to the terms and conditions of which the contract sought by this suit to be enforced was made, seems to be the contract of January 30, 1918, under which complainant acquired title to the property. There is no contract in the record dated January 30, 1917. The date of the contract or conveyance of the property involved by which the immediate predecessor in title of complainant acquired it is not given in the record, but it must have been subsequent to the supplemental contract of December 11, 1917, for the reason that this contract was

made between the parties to the original contract or conveyance and clearly indicates that the interest of complainant's immediate predecessor must have been acquired subsequent to that date.

The paragraph stricken from the answer, the ruling upon which is made the basis of the assignment of error, is as follows:

"And these defendants further say that for the consideration mentioned the complainant in and by its said agreement covenanted and agreed that the stumpage upon all of the lands included in said agreement, lying west of the East Coast Canal should be available for logging and milling purposes by October 1st, 1919; that said stumpage was not so aavilable; that same was necessary for the continued operation of said Canal Lumber Company; that said stumpage was not on said day or at any time prior to the institution of this suit available for logging or milling purposes as in said contract agreed."

The contention of the contesting defendants, appellants here, is that by its contract complainant conveyed to Rentz the "stumpage" described in the contract, subject to the terms and conditions of the several contracts referred to, in consideration for which Rentz agreed and promised to pay an agreed consideration in fixed installments at stated periods; that certain terms and provisions of the contract required by complainant to be complied with, namely, the making available by complainant of the "stumpage" on all the land described in the contract west of the East Coast Canal by October 1, 1919, were not performed and therefore complainant is not in position to demand or enforce payment by these defendants, as successors of Rentz, of amounts alleged in the bill to be due by them under his contract of purchase.

The supplemental contract of December 11, 1917, which is in the form of a letter from one who may, so far as this proceeding is concerned, be regarded as the original owner of the property conveyed to his immediate grantee, contains the following paragraph:

"It is understood that I now, and hereby, deliver to you to cut about 13,000 acres of said land according to the list hereto attached, which list is information and does not alter original contract. (I will also deliver for the purpose of being cut the balance of the timber on the west side of the canal on October 1st, 1909), which will include all the timber on the west side of the canal not now delivered and if possible I will begin these deliveries in October, 1918."

It is stated in the brief of appellee, and seems to be conceded, that the date "October 1, 1909" stated in this quoted paragraph, is error and should be October 1, 1919, and this must, in the very nature of things, be true since the date of the instrument is December 11, 1917, and the quoted paragraph, with respect to the date mentioned, clearly refers to a future event. By comparing the stricken paragraph of the answer with this paragraph of the contract, it will be easily recognized that the defense attempted to be set up is based upon this paragraph of the contract, defendants contending that Rentz acquired "all of the stumpage" coming within the terms of the contract of October 1, 1909, and the supplement thereto, from which the foregoing paragraph is quoted. If the series of contracts considered as a whole are susceptible of this construction, then clearly there is some basis for defendants' contention, and the order striking the quoted paragraph from the answer was error.

On the other hand, complainant, appellee here, contends that by the express terms of the contract between complainant and Rentz he (Rentz) acquired only the timber described in said original contract and supplement thereto "now available," that is to say, "available" or released and subject, under the terms of the original contract, to be cut and removed on the 15th day of July, A. D. 1918, the date of the contract between complainant and Rentz, and that his successors, the contesting defendants, received from him only such interest as he possessed; that by the terms of the supplemental contract the timber on the west side of the canal was not available until October 1, 1919, and, not being available on July 15, 1918, the date of the contract between complainant and Rentz, it was not conveyed to him.

It may be admitted that the situation is complicated and confused somewhat by making each of the series of contracts subject to the terms and conditions of each preceding contract of the series, rendering difficult the ascertainment of the true design of the parties. The intent of the parties with respect to any feature of the contract must be determined from an examination of the whole of the contract, including in this instance all of the contracts, the terms and conditions of which are made a part of the contract under consideration. The interpretation should be of the whole instrument and not of disjointed parts of it. 6 R. C. L. p. 837; West Yellow Pine Co. v. Sinclair, (Opinion filed January 27, 1922), 83 Fla. 118, 90 South. Rep. 828; Dekle v. Valrico Sandstone Co., 74 Fla. 346, 77 South. Rep. 95; Ansley v. Graham, 73 Fla. 388, 74 South. Rep. 505; Ross v. Savage, 66 Fla. 106, 63 South. Rep. 148; L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381; Brown v. Beckwith, 60. Fla. 310, 53 South. Rep. 542; Escambia Land, etc. Co. v. Ferry Pass, etc. Assn., 59 Fla.

239, 52 South. Rep. 715, 138 Am. St. Rep. 121; Hull v. Burr, 58 Fla. 432; 50 South. Rep. 754. It is not enough to look to an isolated phrase or paragraph of the contract in an effort to determine its true meaning. This seems to be the defect in the construction adopted by complainant.

From the series of contracts involved, it appears generally that the parties were dealing with a manufacturing plant and a tract of land, the timber upon which was to be manufactured into lumber by the respective purchasers; that this timber was not, at the time of the original contract nor at the time of any of the subsequent contracts of the series, all available for cutting and removal; that although the tract of land was dealt with as a whole in the contracts, the timber, which was the real subject of the contracts, became available by sections or tracts in installments as it was released from turpentine privileges reserved by the original owner; that the cutting and removal of the timber sold was to proceed in an orderly way from section to section as released, the cutting upon a section to be continued after being commenced until all the timber of the dimensions conveyed thereon should be removed, and that payments under the contract were estimated and fixed at installments sufficient to pay for the timber before or as it was removed by the purchaser under the contract. From all of which it would seem that the several parties, as they entered into the several contracts, contemplated a manufacturing plant and the timber supply available thereto as a single enterprise, and that each of the transactions was intended as a transfer from each party to his successor of the plant and the timber described in the several contracts. Under this view the construction, placed by complainant upon the contract, is untenable. It seems to us, in view of the various provisions of

the contract, which is concededly executory, looking to
the cutting and manufacture of the timber and payments
required to be made therefor, which illuminate and explain
the clause describing the property conveyed, that com-
plainant did not intend to convey and that defendant
Rentz did not intend to purchase merely the timber "now
available" in the sense that his purchase included only the
timber that had been at the date of his contract released
from the turpentine privileges, but that his purchase in-
cluded "all of the stumpage coming within the terms" of
the original contract or conveyance then remaining upon
the land, and that the term "now available" as employed
in the contract should be read as synonomous with "yet
available." This interpretation is more consistent with
the general intent of the contract and with the common
sense of the thing. If this were not true, why should the
contract purport to sell "all of" the stumpage "coming
within the terms of the aforesaid agreement of October 1,
1909, *and the supplement thereto* dated December 11,
1917," when, according to the terms of the supplemental
contract mentioned, the balance of the timber on the
west side of the canal was not to be delivered until Octo-
ber 1, 1919, following? This view is re-enforced by refer-
ence to the contract under which complainant claims con-
taining a description of the same property as conveyed to
it. By that contract, which of course antedates the con-
tract between complainant and defendant Rentz, com-
plainant was granted all of the stumpage described in
the original contract of October 1, 1909, and the *supple-
ment thereto "now available* for logging and milling
purposes," that is to say, "available" on January 30,
1918, the date upon which complainant acquired title. If
the expression "now available" in the contract between
complainant and Rentz is to be given the literal and

limited construction contended for by complainant, it would of necessity be given a like meaning in the contract or conveyance under which complainant claims, with disastrous results to his title to all the property except that "now available" at the time of his purchase.

This discussion results in the adoption generally of the interpretation of the contract contended for by appellants. Upon this construction of the contract, where the defense attempted to be set up in the stricken paragraph of the answer is sufficiently pleaded, defendants should not be deprived of an opportunity to offer proof in support of such defense. Pitts v. Powledge, 56 Ala. 147; Durment v. Tuttle, 50 Minn. 426, 52 N. W. Rep. 909; American Assn. v. Short, 97 Ky. 502, 30 S. W. Rep. 978. Whether the measure of defendants' loss or damage is upon the basis of a total failure to deliver or make "available" the "balance of the timber" conveyed upon the west side of the canal, or upon the basis of a delay beyond the date stated for such delivery, is not clearly averred, but it can not be said that the matter pleaded, if proved, is wholly insufficient as a defense to the bill. Walker v. American Agricultural Chemical Co. (Opinion filed January 30, 1922), 83 Fla. 153, 90 South. Rep. 696; Southern Ferro Concrete Co. v. Federal Terra Cotta Co., 79 Fla. 376, 84 South. Rep. 171; Campbell v. A. L. Wilson Co., 74 Fla. 608, 77 South. Rep. 540; Oneida Land Co. v. Richard, 73 Fla. 884, 75 South. Rep. 412.

The decre appealed from is reversed.

BROWNE, C. J., AND TAYLOR AND WHITFIELD, J. J., concur.

ELLIS, J., dissents.

ELLIS, J.—Dissenting.

The Florida Naval Stores and Manufacturing Company, complainant below, brought its suit against the appellants upon a contract which it had entered into with J. A. Rentz on July 15, 1918.

The bill contained alternative prayers. It first prayed for a cancellation of the contract and that the defendants be required to yield possession of that which was the subject of the contract and that the complainant be relieved from any obligations under it; the other prayer which was inserted in the bill as an amendment upon leave of the court sought to have the contract declared to be a mortgage lien upon the properties which constituted the subject of the contract and that the mortgage be foreclosed and the properties sold to pay the amount of money found to be due.

The subject of the contract was the logging and milling privileges of timber of certain classes located on certain lands which were in October, 1909, owned by John H. Pitt, in the counties of St. Johns and Duval. On October 1st, 1909, Pitt sold to Morgan V. Gress. On December 11th, 1917, J. H. Pitt wrote a letter to Morgan V. Gress acknowledging receipt of fifteen thousand dollars to be applied on the contract of October 1st, 1909. That letter contained the following paragraph: "It is understood that in the future the timber cut from the lands referred to in said contract is to be measured in the manner provided in that contract, and that you are to pay me on account of the sums due and to become due by virtue of that contract at the rate of $3.00 per thousand as the timber is cut, until the total amounts due and to become due by virtue of said contract are paid, payments to be

made quarterly, beginning April 1st, 1918, for the timber cut and removed the previous quarter, all checks to be made payable on account until the final settlement.

"It is understood that I now, and hereby, deliver to you to cut about 13,000 acres of said land according to the list hereto attached, which list is information and does not alter original contract. I will also deliver for the purpose of being cut the balance of the timber on the west side of the canal on October 1st, 1909, which will include all the timber on the west side of the canal not now delivered and if possible I will begin these deliveries in October, 1918." Thereafter Gress assigned all his right, title and interest in the contract to the Morgan Lumber Company which on January 30th, 1918, assigned all its right, title and interest in said contract to the complainant.

On the 15th of July, 1918, the complainant entered into an agreement with J. A. Rentz. That agreement is the basis of this litigation. Rentz afterwards conveyed to J. N. C. Stockton, W. P. Smith and B. B. Brown all his interest, right and title to the properties that he acquired under the contract with the Florida Naval Stores and Manufacturing Co., and Stockton and his associates transferred their rights to the Canal Lumber Company.

When the conditions which, under that contract, Rentz was required to perform were ignored or disregarded the complainant brought its suit as above stated. The bill alleges in paragraph three that under the agreement made with Rentz he agreed to pay $35,725.00 for the properties; that of that sum $20,851.10 had been paid, but that a note due August 5th, 1915, for $1,500.00, and one for the same amount due September 5th, 1919, and one for a like amount due October 5th, 1919, and another for a like

sum due November 5th, 1919, were not paid and they are now due and payable. It was to enforce the payment of these notes that the suit was brought. It was also alleged that on December 5th, 1919, and on January 5th, February 5th, March 5th and April 5th, 1920, notes in the sum of $1,500.00 each would become due and on May 5th, 1920, a note for $1,373.90 would become due. All of which makes a total of $14,863.90, an error of ten dollars.

The defendants answered and in the third paragraph of their answer they averred that the "complainant in and by its said agreement covenanted and agreed that the stumpage upon all of the lands included in the said agreement lying west of the East Coast Canal should be available for logging and milling purposes by October 1st, 1919; that said stumpage was not so available, that same was necessary for the continued operation of said Canal Lumber Company; that said stumpage was not on said day or at any time prior to the institution of the suit available for logging or milling purposes as in said contract agreed." The above averment was upon motion stricken from the third paragraph of the answer. Whether it was rightfully stricken constitutes the question presented on this appeal. There was a decree for the complainant from which the defendants appealed.

There is no such language or clause bearing such interpretation contained in the agreement between the complainant and J. A. Rentz which as stated was dated July 15th, 1918, and it is only upon the conditions named in that agreement that the defendants can rely for an excuse for the non-performance of the promises made by J. A. Rentz. Unless they rely upon some other agreement existing between them and the complainant and there is no claim of that nature in the answer.

The contention of appellants is that the letter of J. H. Pitt to Morgan V. Gress dated December 11th, 1917, contained the agrement upon which they rely, and that agreement placed the burden upon the complainants to make the "stumpage on the lands west of the East Coast Canal available for logging and milling purposes on October 1st, 1919." To reach this conclusion it has to be assumed that the date named in the letter namely, October 1st, 1909, was an error, and further that it was intended to be October 1st, 1919; that in the agreement of January 30th, 1918, by which the complainant acquired the interest of the Morgan Lumber Company, that the latter company obligated itself to make the "stumpage on the lands lying west of the East Coast Canal available for logging and milling purposes on October 1st, 1919," notwithstanding the language of the contract which limits the complainants rights acquired thereunder to "all of the stumpage coming within the terms of the aforesaid agreement of October 1, 1909, and the supplement thereto *now available* for logging and milling purposes." The language of the agreement between the complainants and J. A. Rentz which is under seal of both parties and dated July 15th, 1918, must also be ignored. In the preamble to that contract the timber available for logging purposes to December, 1917, was again emphasized in the following manner. The preamble referred to the contract between Pitt and Gress on October 1st, 1909, and the supplement which was the letter of Pitt to Gress dated December 11th, 1917: That the Morgan Lumber Company had succeeded to the rights and privileges of Gress under the agreement and supplement, but that on January 30th, 1918, the Morgan Lumber Company had sold, conveyed, transferred and set over, assigned and delivered unto the Manufacturing Company (the complainant herein) and that Company had

17—Vol. 83.

purchased from the Morgan Lumber Company "All the stumpage coming within the terms of the aforesaid agreement between John H. Pitt and Morgan V. Gress dated October 1st, 1909, and the supplement thereto dated December 11th, 1917, *Which was then available* for logging and milling purposes, subject to the further terms, and conditions contained in the said agreement of January 30th, 1918." And in the body of the contract the language must again be ignored which for the third time in these agreements emphasized the fact that it was the timber *now available* which was sold for logging and milling purposes. The first paragraph following the preamble of the agreement contains the following language: That the manufacturing company upon the compliance by the said J. A. Rentz of all the terms, stipulations, conditions and agreements herein contained will sell and convey to the said J. A. Rentz (1) *Without* warranty all of the stumpage coming within the terms of the aforesaid agreement of October 1, 1909, and the supplement thereto dated December 11th, 1907, *now* available for logging and milling purposes subject, however, to all the terms and conditions of the said contract of January 30th, 1917, (1918): (2) *With* warranty, the following described personal property," etc.

The majority opinion applies one rule for the construction of contracts and overlooks another which is of first importance. That rule is: The intention of the parties must be gathered from the language of the instrument. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it. The language must be sufficient when looked

at in the light of such facts as the court is entitled to consider to sustain whatever effect is given to the instrument. Taking into consideration this limitation it may be said that the object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract. In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used. See 6 R. C. L. p. 835-836 and authorities cited: Pensacola Gas Co. v. Lotze, 23 Fla. 368, 2 South. Rep. 609; Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427; Brown v. Beckwith, 60 Fla. 310, 53 South. Rep. 542. A party is bound by the terms of his written contract without regard to his understanding of its meaning when he executed it. Perry v. Woodberry, 26 Fla. 84, 7 South. Rep. 483. The legal effect of a certain complete, unambiguous, written instrument is determined by the court inspecting the instrument itself. Langley v. Owens, 52 Fla. 302, 42 South. Rep. 457. Parties to a written instrument are presumed to have intended words and terms, knowingly used to have their proper legal meaning and effect. Langley v. Owens, *supra,* Ross v. Savage, 66 Fla. 106, 63 South. Rep. 148. The ordinary meaning of a word is *prima facie* that employed. Capital City Bank v. Hilson, 59 Fla. 215, 51 South. Rep. 853.

If a written contract is ambiguous or obscure in its terms so that the intention of the parties cannot be understood from the language used, parol evidence of the facts and circumstances in the light of which the parties acted and wrote is admissible not for the purpose of changing the terms of the written instrument but to elucidate the words used in the contract. Scmitt v. Bethea, 78 Fla. 304, 82 South. Rep. 817.

In the case of Perry v. Woodberry, *supra,* the court speaking through Mr. Chief Justice Raney used the following language: "When parties deliberately put their engagement into writing in such terms as import a legal obligation without any uncertainty as to the object or extent of the engagement, it is, as between them, conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing, and all oral testimony of any previous colloquium between them or any conversation or declaration at the time of its execution, or afterwards, will be excluded as their admission in evidence would tend in many instances to substitute a new and different contract from what was really agreed upon. 1 Grenleaf on Evidence, Section 275. The instrument is the best possible evidence of their intent and meaning because it is their own statement of what they do mean and intend at the time. No other language is admissible to show what they meant or intended and for the simple reason that each of them has made that to be found in the instrument the agreed test, his meaning and intention." There is no ambiguity in the following language which was used in the contract between the complainant and Rentz, viz: "The Manufacturing Company upon the compliance by the said J. A. Rentz of all the terms, stipulations, conditions and agreements herein contained, will sell and convey to the said J. A. Rentz (1) without warranty all of the stumpage coming within the terms of the aforesaid agreement of October 1st, 1909, and the supplement thereto dated December 11th, 1917, now available for logging and milling purposes." Now when the contract between the complainant and Rentz was made on July 15th, 1918, there were under the contract between Pitt and Gress dated October 1st, 1909, and the supplement dated December 11th, 1917, two classes of "stump-

VOL. 83, JANUARY TERM, 1922.        517

Canal Lum. Co. et al. v. Fla. N. S. and Mfg. Co.—Dissenting Opinion.

age for logging and milling purposes." That which was then (now July 15th, 1918), available, contained on 13,000 acres of land according to the list furnished with the letter of December 11th, 1917, and that which *would be avail*able on October 1st, 1919, which would include all the timber on the west side of the canal, *not now delivered.* The complainant and Rentz deliberately limited their contract to that class which was on the date of their contract then, "now available," the majority opinion reasons that if the "literal and limited" construction contended for by complainant is placed upon the expression "now available" it would of necessity be given a like meaning in the contract or conveyance under which complainant claims, with disastrous results to his title to all the property except that now available at the time of his purchase."

Even so, but who is to say that the complainant purchased more than that which was then available? The contract between Morgan Lumber Company and the complainant expressly limited the stumpage sold to all that "coming within the terms of the aforesaid agreement of October 1, 1909, and the supplement thereto *now available* for logging and milling purposes." Is the complainant to be given more than it purchased to support the argument that Mr. Rentz and his assigns were entitled to more than he purchased? But suppose that the complainant only purchased the stumpage which was available on the 30th day of January, 1918, and did not purchase that which would not be available until October 1st, 1919, surely that is no concern of the associates of Mr. Rentz, who by their insistance that the words *"now available"* mean, that stumpage which would be available twenty months thereafter, injected into the contract the only question as to its purpose. All that the vendee, Rentz,

and his assigns could insist upon is the right which the complainant had to the stumpage then available as shown by the contract of October 1st, 1909, and supplement of December 11th, 1917, because the language showed such to be the parties' intention at the time. The sale of the stumpage then available was to be made without warranty. See Morgan v. Eaton, 59 Fla. 562, 52 South. Rep. 305.

The subject matter of the contract between the complainant and Rentz embraced more property than the right to stumpage which the complainant acquired from the Morgan Lumber Company, it included a large amount of personal property and leases, the former transferred without warranty, and the latter, the personal property and leases, with warranty.

The majority opinion concedes that at no time from the making of the original contract to the one between complainant and Rentz was all the timber available for "cutting and removal." But it must be conceded that at least on December 11th, 1917, some of the timber was then "available for logging and milling purposes" and so far as this record discloses that which was not to be available until October 1st, 1919, was merely the timber on the west side of the canal which had *not already been* delivered.

How large a portion of the original acreage does not appear, whether great or small, valuable or not, there is no information in the paragraph of the answer which was stricken. But the majority opinion thus points out that when the Morgan Company sold to the complainant and when the latter sold to Rentz there were two classes of lands upon which the timber could be used for "logging and milling purposes" and those two classes were: First, that land upon which the timber was "now available" and

that upon which the timber was *not then* available. The parties dealt as their language indicates with the former class. The majority opinion after thus precisely pointing out the two classes of lands, ignores the distinction between them which the parties themselves by appropriate language in their contracts definitely made.

The letter of Mr. Pitt dated December 11th, 1917, which is the supplement referred to in the contracts between the Morgan Lumber Company and the complainant and between the latter and J. A. Rentz, itself makes the distinction between the two classes of lands, because it clearly states that the *balance* of the timber on the *west* side of the canal, will not be delivered, that is to say, will *not* be *available* for logging and milling purposes, until October 1st, 1919. The cases cited in the majority opinion in support of the major principle upon which the opinion rests, which is: that in construing a contract it is not "enough to look to an isolated phrase or paragraph of the contract in an effort to determine its true meaning," support the rule but with a qualification which the opinion ignores. That qualification is stated in the fourth headnote in the case of Ross v. Savage *et al.*, 66 Fla. 106, to be: That the first point in construing a contract is to ascertain what was the meaning and understanding of the parties, as *shown* by the *language* used *applied* to the *subject* matter.

When the language used in any paragraph or phrase is ambiguous or contradictory of the meaning of the words used in other portions of the instrument, then and not until then, does there arise any necessity for construction. When it does arise the rule announced in the majority opinion applies and the cases cited so hold.

When at a given date certain timber that may be used for logging and milling purposes is classified by parties

dealing with it, as timber now available and timber not now available, and they deal presently by contract between them with the first class only, there can be no reasonable difference of opinion as to which class of timber the parties had in mind when making their contract, unless there appears elsewhere in the contract language which contradicts or is repugnant in meaning to the words by which the particular class of timber is designated. In the contract under consideration there were no such paragraphs or clauses, consequently no necessity to resort to construction. The deliberate purpose of the parties was expressed in words of clear and unmistakable meaning and they are bound thereby according to every decision of this court upon the subject.

There is another reason why the clause in paragraph three of the answer was properly stricken. The contract between complainant and J. A. Rentz under which the defendants claim any rights to the property described therein which they are enjoying is an executory agreement upon the complainant's part, under which it is obligated to convey the properties only upon compliance by defendants with all the terms, stipulations, conditions and agreements therein contained. Until they pay what they agreed to pay they are entitled to no conveyance or transfer of any of the properties. The stricken part of the answer amounts to an averment that complainant breached the agreement nearly two months after the complainant's right to cancel it had accrued under its terms. A payment of $1,500 was due August 5th, 1919, and another for a like amount was due September 5th, 1919. Neither was paid and under the terms of the agreement the complainant's action accrued upon the defendant's failure to meet the first payment, yet as a defense to that suit the defend-

ants aver that certain timber on the west side of the canal was not available on October 1st, 1919.

Even under the contention of appellants the delivery of the timber west of the canal was not a condition precedent imposed upon the complainant below before it could claim the performance of the agreement on Rentz' part to be performed. The payment by him or his assigns of the price he agreed to pay for the properties was a con-- dition precedent imposed by the terms of the agreement upon him before he could enjoy the possession and use of the properties except as the same was qualifiedly bestowed upon him at the time the agreement was made in July, 1918. In that agreement the covenant of the Florida Naval Stores & Manufacturing Company to convey the properties and the covenant of J. A. Rentz to pay were independent covenants. The payment by Rentz of the purchase price of the properties was a condition precedent to the vendor's covenant to convey. See Loud v. Pomona Land & Water Co., 153 U. S. 564, 38 Law Ed. 822; Southern Pacific R. R. Co. v. Allen, 112 Cal. 461, 44 Pac. Rep. 798.

The views expressed in the majority opinion seem to be, influenced by the supposed inconvenience and hardship which the complainant's construction of the contract might entail. As, for instance, it might find that its own title to the stumpage, which under the terms of the "supple-, ment," to the agreement of October, 1909, would not be available until October 1919, might fail; that such a construction would hinder and impede the operation of defendants' mill and inconvenience them in the manufacture of lumber, so the majority opinion strikes out the word "*now*" in the contract and inserts the word "yet" so that the contract might read that complainant would

sell all timber "yet available" instead of what it agreed to do, namely, sell all timber "now available." But even if such literal changing of the terms of the agreement was justified, the fact remains that the parties deliberately agreed that the payment of the purchase price was a condition precedent to a conveyance of any of the properties. If, as Mr. Justice Jackson said in the case of Loud v. Pomona Land & Water Co., *supra,* the parties so desired they had a right to agree that the performance by one shall be a condition precedent to performance by the other.

In this case there is no ambiguity in the language of the contract. The language of the contract is: "That the manufacturing Company upon the compliance by the said J. A. Rentz of all the terms, stipulations, conditions and agreements herein contained, *will* sell and convey to the said J. A. Rentz (1) without warranty all the stumpage," etc.

Language could hardly be more explicit to indicate the intention of the parties to be that Rentz should first pay the purchase price before he could demand a conveyance. Even according to the construction placed upon the contract by the majority opinion, the purpose of Mr. Rentz, as shown by the language of the instrument, was to rely upon his remedy for any failure on complainant's part to make the stumpage west of the canal available on October 1st, 1919. And he could not plead such failure as a bar to complainant's right of action which had accrued nearly two months before.

The covenants in the contract should be interpreted as of the date of the execution of the instrument. "They are not of a shifting character independent at one time and dependent at another."

The averment stricken from the answer therefore constituted no defense to the complainant's suit. It was not regarded by the majority opinion as a plea of failure of consideration although it seems to have been set up as a partial failure of consideration or a counter claim or set off, but the averment fails to meet the requirements of such a defense. If it was a cross demand it should have been set out with the same substantial requisites as an original cause of action, it should be sufficient in itself, it should not only show the character of the claim but its amount. If it was intended as an averment of partial failure of consideration there should have been an averment of damage. Gonzales v. DeFuniak Havana Tobacco Co., 41 Fla. 471, 26 South. Rep. 1012; Livingston v. L'Engle, 27 Fla. 502, 8 South. Rep. 728; Ahren & Hyer v. Willis, 6 Fla. 359; Kellogg v. Singer Mfg. Co., 35 Fla. 99, 17 South. Rep. 68; Mayo *et al.* v. Hughes, 51 Fla. 495, 40 South. Rep. 499; Jones v. Streeter, 8 Fla. 83.

There was no averment of any injury to the defendant by reason of the non-availability of the stumpage west of the canal on October 1st, 1919, nor was there any averment of its value.

I am, therefore, of the opinion that the decree of the Chancellor should be affirmed.