931 So.2d 942 (2006)
OKEECHOBEE LANDFILL, INC., a Florida corporation, and Reuter Recycling of Florida, Inc., a Florida corporation, Appellants,
v.
REPUBLIC SERVICES OF FLORIDA, LIMITED PARTNERSHIP, a Delaware limited partnership, f/k/a Republic Services of Florida Hauling, LLC, a former Florida limited liability company, Appellee.
No. 4D04-2076.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
Rehearing Denied July 11, 2006.
*943 John H. Pelzer and Brigid F. Cech of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellant.
Curtis Alva, Jack J. Aiello, and Rick J. Burgess of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee.
GROSS, J.
This is an appeal from a final summary judgment entered in a declaratory judgment action. Republic Services of Florida, L.P. filed an action in circuit court to determine its rights under two related contracts. See § 86.011 et seq., Fla. Stat. (2002). Okeechobee Landfill, Inc., and Reuter Recycling of Florida, Inc., were the defendants, as each was a party to one of the agreements. The circuit court found the contracts to be unambiguous and entered summary judgment in favor of Republic. We agree that the contracts are unambiguous, but find that they support the interpretation advanced by Okeechobee and Reuter. We therefore reverse the judgment of the circuit court.
The parties to this appeal are in the waste disposal business. Okeechobee and Reuter are Florida subsidiaries of Waste Management, Inc., one of the nation's largest waste services companies. Republic is a Florida subsidiary of Republic Services, Inc., another national waste company in the same business. The agreements here at issue concern solid municipal waste transfer and disposal rights.
Generally, solid municipal waste disposal involves a three-stage process. The first stage is "hauling." During the hauling stage, local capacity collection trucks pick up waste from commercial and residential customers. The second stage is the "transfer stage," during which collection trucks bring the waste to a transfer station, where it is combined, compacted, loaded onto larger capacity tractor trailers, and transported to a disposal facility. The third and final stage is "disposal." During the disposal stage, the waste is deposited at a landfill or incineration facility. The transfer stage is necessary because disposal sites are often far away from collection sites. Since the transfer stage tractor-trailer trucks have greater carrying capacity than the collection trucks, this middle step makes long-distance waste transportation more efficient.
Not every solid waste services company participates in all three stages of the disposal process. For example, some companies participate only in the hauling stage and contract with other companies for transfer and disposal services. Few companies own transfer and disposal facilities, because public opposition makes permitting and construction difficult.
At the time this action was filed, Republic was engaged primarily in hauling; it contracted with Okeechobee and Reuter for transfer and disposal services. Reuter provided transfer services to Republic at its Reuter Transfer Station pursuant to a Transfer Station Throughput Agreement (the "Transfer Agreement"). Okeechobee provided disposal services to Republic at its landfill pursuant to a Disposal Capacity Agreement (the "Disposal Agreement"). The Transfer and Disposal Agreements were executed the same day by the same corporate representatives. Republic's obligations under these Agreements were the subject of its action for declaratory relief.
The Disposal Agreement sets forth Republic's obligation to deliver a set sum of "South Florida Waste" to Okeechobee for *944 disposal.[1] It also requires Republic to use Okeechobee as its "exclusive" disposal provider until it delivers a set sum of waste. Republic's obligations to Okeechobee are set forth in terms of "waste volume."
Under the Transfer Agreement, Republic's obligations to Reuter are also described in terms of "waste volume." Republic's waste volume obligations to Reuter under the Transfer Agreement are tied directly to its waste volume obligations to Okeechobee under the Disposal Agreement. The Transfer Agreement includes the Disposal Agreement's waste volume schedule "for ease of reference" in an abbreviated format, with an "inferiority clause" making the Transfer Agreement subsidiary to the Disposal Agreement in certain respects, which we will explain later in this opinion.
In addition to waste volume provisions, the Agreements share the same duration. Absent special circumstances, both Agreements run from January 4, 1999 until "the earlier of (i) December 31, 2018, or (ii) the date [Republic] shall have used its maximum tonnages available under all waste volume options set forth in the [Disposal Agreement]." Stated differently, both Agreements terminate upon the same specified date or when Republic's disposal obligations with Okeechobee conclude, whichever occurs first.
A dispute arose when Republic began to develop plans to construct its own transfer facility on a five-acre parcel adjacent to Reuter's facility. The dispute concerned whether the Agreements obligated Republic to transfer all of its South Florida Waste with Reuter before Okeechobee was obligated to accept that waste for disposal. When Republic made attempts to deliver South Florida Waste directly to Okeechobee without transferring at Reuter, Okeechobee refused to accept it, stating that under Section 7(a) of the Transfer Agreement,[2] Republic was required to transfer all South Florida Waste with Reuter before disposal at Okeechobee. Republic responded by filing its complaint for declaratory relief.
Both sides moved for summary judgment, contending that the Agreements unambiguously supported their respective positions. The circuit court granted Republic's motion for summary judgment and denied the motions filed by Okeechobee and Reuter.
We agree with Okeechobee and Reuter that (1) Section 7(a) of the Transfer Agreement unambiguously requires Republic to transfer all of its South Florida Waste at Reuter and (2) the "inferiority clause" in the Transfer Agreement did not alter this obligation.
A trial court's decision concerning the entry of a summary judgment is reviewed de novo. See, e.g., Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "The interpretation or construction of a contract is a matter of law and an appellate court is not restricted from reaching a construction contrary to that of the trial court." Bombardier Capital Inc. v. Progressive Mktg. Group, Inc., 801 So.2d 131, 134 (Fla. 4th DCA 2001). "The polestar guiding the *945 court in the construction of a written contract is the intent of the parties." Id. "The intent of the parties ... must be determined from an examination of the whole of the contract, including ... all of the contracts the terms and conditions of which are made a part of the contract under consideration." See Canal Lumber Co. v. Fla. Naval Stores & Mfg. Co., 83 Fla. 501, 92 So. 279, 281 (1922). "In the event that the language of a contract is clear and unambiguous, the court will enforce such contract according to its terms." Avatar Dev. Corp. v. De Pani Constr., Inc., 834 So.2d 873, 876 n. 2 (Fla. 4th DCA 2002). Only where a contract is ambiguous, i.e., it is susceptible to more than one reasonable interpretation, can a court resort to the rules of construction and extrinsic evidence to discern the parties' intent. See Miller v. Kase, 789 So.2d 1095, 1097-98 (Fla. 4th DCA 2001); Royal Cont'l Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782, 784 (Fla. 4th DCA 1981).
The only reasonable interpretation of the Agreements is that Republic is obligated to transfer an amount of South Florida Waste with Reuter equal to that amount it could dispose at Okeechobee. Section 7(a) of the Transfer Agreement requires Republic to "deliver to the [Reuter Transfer Station] all South Florida Waste that [Republic] and/or its designees collects, up to the maximum volumes that [Okeechobee] is obligated to accept under such Disposal Capacity Agreement."
The maximum waste volume Republic may send to Okeechobee is set forth in Section 7 of the Disposal Agreement. This section provides an "Initial Capped Amount" of waste volume followed by three options to increase that "Initial Capped Amount." The Transfer Agreement recognized the Disposal Agreement's waste volume schedule and reproduced it in substantially the same form under Section 7(a), "for ease of reference," with an "inferiority clause." The "inferiority clause" ensured that Republic's waste volume obligations to Reuter were the same as its waste volume obligations to Okeechobee. This intent is clear based on the language the parties chose; the "inferiority clause" states that the Disposal Agreement "reflect[s] the parties' binding commitment with respect to the volumes for waste disposal" under the Transfer Agreement. Thus, the inferiority clause applies only to inconsistencies concerning the amount of waste Republic is obligated to deliver under the Agreements; it does not apply to where or whether transfers had to occur.
The circuit court's interpretation of the inferiority clause nullified the provisions in the Transfer Agreement requiring Republic to conduct transfers at Reuter, which was the primary purpose of that contract. The circuit court's interpretation was based on perceived inconsistencies in the Agreements; however, Republic's waste volume obligations under both Agreements are the same. It is obligated to deliver the operative capped amount of waste under the Disposal Agreement's waste volume schedule to both Reuter (for transfer) and Okeechobee (for disposal). Nowhere in the Disposal Agreement was there any language inconsistent with Republic's obligation to conduct transfers at Reuter before disposal at Okeechobee. To the contrary, the Disposal Agreement expressly recognized such transfers when it stated:
[Republic] and or its designees shall have the obligation to deliver to the [Okeechobee Landfill] all South Florida Waste that [Republic] and/or its designees collects up to the maximum volumes that [Okeechobee] is obligated to accept under this Agreement, and [Republic] shall direct that, unless otherwise agreed, volumes equivalent to all *946 South Florida Waste processed for [Republic] at the Reuter Transfer Station be transferred to the [Okeechobee Landfill].
(Emphasis added). The Disposal Agreement also states the cost of disposal is calculated "based upon the volumes of [Republics' deliveries to [Reuter]]." These provisions of the Disposal Agreement are consistent with Republic's obligation to conduct transfers at Reuter.
Republic contends that two federal court consent decrees alter the meaning of the Agreements. Although the federal cases were referenced in the Recitals to the Agreements, the terms of the consent decrees are not part of the Agreements and the decrees were not incorporated into the Agreements by reference. The decrees therefore constitute extrinsic evidence which cannot be considered to modify these unambiguous Agreements. See Thomas v. Hartman, 553 So.2d 1256 (Fla. 5th DCA 1989).
For these reasons, we reverse the summary final judgment entered in favor of Republic, remand to the circuit court, and direct it to enter summary judgment adopting the interpretation of the Agreements advanced by appellantsthat Republic must deliver all South Florida Waste to the Reuter Transfer Station and Reuter must deliver the equivalent volume of waste on behalf of Republic to the Okeechobee Landfill, up to the volumes of disposal provided under the Disposal Agreement.
Reversed and Remanded.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] The Agreements both define "South Florida Waste" as

Acceptable Waste collected, or delivered directly from a transfer station located, in Broward, Dade, or Monroe counties, Florida.
[2] Section 7(a) is the provision requiring Republic "to deliver to the [Reuter Transfer Station] all South Florida Waste that [Republic] and/or its designees collects, up to the maximum volumes that [Okeechobee] is obligated to accept under such Disposal Capacity Agreement." (App. C:6-7)