GUSTAV MULLER, JR., as Administrator of the Estate of GUSTAV MULLER, Deceased, v. GABLES RACING ASSOCIATION, INC., a Florida Corporation.

196 So. 864
Division A
Opinion Filed January 26, 1940
On Rehearing June 28, 1940

*Thomas H. Anderson* and *Loftin, Calkins, Anderson & Scott,* for Appellant;

*S. P. Robineau* and *Garland M. Budd, Jr.,* for Appellee.

THOMAS, J.—The appellant, Gustav Muller, Jr., as administrator of the estate of Gustav Muller, senior, deceased, has submitted one question for our determination, that is: the liability of the defendant Gables Racing Association, Incorporated, on a contract alleged to have been made by the corporation with Gustav Muller, senior, in the year 1931 whereby the latter agreed to serve as a director for a year in consideration for the delivery to him of two hundred and fifty shares of the capital stock of the former.

In the bill of complaint the plaintiff prayed for an order compelling the defendant to deliver to him a certificate for the stock or, in the event this was impossible, to pay him the value thereof, and in either case to pay him the accrued dividends. Bases for the prayer were the allegations of the amended bill and its amended paragraph IV that in August, 1931, prior to the issuance to the corporation of a license to carry on its business of operating a race track and prior to the election sanctioning the conduct of such business, the defendant induced Gustav Muller, since deceased, to become a director for one year and agreed to imburse him for the services by issuing to him two hundred and fifty shares of stock; that Muller accepted the directorship and served in that capacity until his death about three years later; and that no stock was issued. According to the allegations of

the bill the authorized capital stock was fifteen thousand shares.

The defendant represented in his answer that the authorized capital stock consisted of twenty thousand shares and that although Gustav Muller was elected a director in September, 1931, and served until his death no agreement was ever made to compensate him for his services nor demand made by him for remuneration. It was asserted that all of the authorized capital stock was issued prior to August, 1931.

The cause was referred to a master in chancery a few days following the filing of defendant's answer and he was directed to report the testimony but was not empowered to make findings. While the cause was pending before him and during the taking of testimony, a stipulation was signed by counsel representing the parties wherein they agreed that no testimony be introduced about the value of the stock until the master decided the right of the plaintiff to it. It was expressly stated that: " * * * such question shall be ruled upon by the master before evidence is offered regarding the value of such stock. * * * "

Upon determination by the master that the plaintiff should not prevail he was to report this finding to the court and either party could then proceed according to law " * * * without ·prejudice to the right of the plaintiff to conduct an inquiry before the master as to the value of the stock should the master's report or any decree entered thereon not be affirmed."

Following this stipulation the master, in an order reciting it and referring to the proofs taken before him, decided that the plaintiff was entitled to the stock but that the defendant was unable to issue it.

Afterwards, notwithstanding the stipulation, which seems

to us very certain in its terms that the master should first pass upon the right to recover and if he found for the plaintiff the latter should have the right to introduce testimony as to its value if the delivery of the certificate did not appear feasible, the defendant moved for permission to amend his answer and for an order requiring the report to be made. The chancellor granted permission to file the amended pleading " * * * to the extent that the said amended answer conforms to the proof heretofore taken by the master * * *."

It was then that counsel for the defendant presented the objection to the master's ruling, rendered pursuant to the stipulation that the officer was without authority and his conclusions were unsupported by the law and the evidence.

Upon the pleadings we have described and the proofs taken before the master the cause was heard and a decree entered dismissing the bill.

Inasmuch as the appellant has not dwelt upon the propriety of the chancellor's action in hearing the cause despite the stipulation, we will proceed to dispose of the controversy upon the merits.

A perusal of the record reveals that Frank Bruen, who was interested in establishing a race track in Coral Gables, hard by Miami, and who held practically the entire common stock in the corporation for that purpose, gathered around him in September, 1931, several prominent Miamians, including Gustav Muller, and represented that of the fifteen thousand shares of common stock seven thousand five hundred would be used for collateral in financing the project, five thousand would be retained by him for his own purposes, one hundred would be delivered to each of the ten persons who agreed to act as directors and the remaining fifteen hundred would be retained temporarily for delivery

to other influential parties whose support might be needed to effect approval by election (c. 14832, Acts 1931) of the operation of the track. In the absence of need for further assistance these fifteen hundred shares should also be divided among the directors.

It is obvious from the record that the group with whom he discussed these arrangements were selected by him because of their prominence and standing in the community. The use of their names was evidently calculated to inspire confidence in the integrity of the organization not only in securing the approval of the electorate but also in the conduct of its activities after approval.

Upon these facts appellant insists that he was entitled to a decree establishing his right to the stock as the administrator of the estate of Gustav Muller. Against this position appellee contends that there is fatal variance between the allegations of the bill as amended and the proof offered.

It has been said that the specific performance of a contract will not be enforced unless the agreement is clearly established as alleged in the bill and that a parol contract must be proven by evidence stronger than a mere preponderance. Maloy v. Boyett, 53 Fla. 956, 43 South. Rep. 243; Williams v. Bailey, 69 Fla. 225, 67 South. Rep. 877.

In support of the final decree, appellee, by its counsel, analyzes the proof offered in support of the bill and points to discrepancies which it is contended free the action of the chancellor from any criticism. It is urged that there can be no error on his part because of the variance between the date alleged in the bill, August, 1931, and the proof of the meeting of the prospective directors and the stockholder Bruen, September 14, 1931. We are unable to conclude that this discrepancy is at all material. Many witnesses who

were in the same situation as Muller testified as to all of the circumstances of the meeting at which the contract is alleged to have been formed, and after reading the testimony we are not conscious of any conflict in their stories or even in the narratives of the defendant's witnesses about the place of the meeting or the approximate date. That it was actually held in September instead of the preceding month seems unimportant in view of the clear intent of all the parties reflected in the record.

They gathered in a certain hotel in the city of Miami at the invitation of Bruen, after deliberation among some of them, whereupon he outlined the purpose of calling them together and sought their cooperation and services upon the board of directors of the appellee to the end that the proposed race track would be approved and, when approved, successful.

Consequently, we feel that the position of the appellee that there is a fatal variance because of the failure of the plaintiff to show that there was a contract in August; that Muller became a director in August; and that he served for a year from August, is not sound.

It is further urged that there was a material variance because of the allegation of the bill with reference to shares of "capital stock," although in the proof it developed that the capital stock was divided into two classes, viz.: fifteen thousand shares of common stock of no par value and five thousand shares of preferred stock of the face value of one hundred dollars each. This likewise seems unimportant. From the testimony in the case it is a reasonable deduction that the common stock was referred to by all the parties and the total amount of the shares which were to be distributed to the directors, assigned for financing and retained by Bruen equals the amount of the common stock.

We pass now to the proposition that there could have been no recovery under the bill of complaint because at the time of the meeting to which we have referred there was not sufficient treasury stock to make the distribution alleged to have been promised because Bruen, himself, owned all of the fifteen thousand shares of common stock. We have little sympathy for that position. It would be unjust and contrary to the principles of equity to hold that a man could interest persons to serve as directors in a corporation in which he held all, or practically all, of the stock, agree that they should be delivered certain shares in consideration of services to the corporation and then aid in defeating the claim because such stock had been theretofore issued to him. Such a ruling would not be in harmony with decisions of this and other courts on the subject.

In Swartz v. Burr, 43 Cal. App. 422, 185 Pac. Rep. 411, appears the following language:

"The law is not scrupulously particular in discriminating between the contracts of one who practically owns all the stock of a corporation and controls its affairs, as to whether he executes a contract relating to the corporate business in his individual or in the corporate capacity."

This Court held in Selige v. Selige, 134 Fla. 622, 184 South. Rep. 667, that a wife could be decreed to occupy a residence owned by a corporation, not a party to the divorce suit between her and her husband, where it was shown that the latter owned the major portion of the capital stock.

While the rule is that the acts of stockholders are regarded as personal, Fletcher Cyclopedia of Corporations, Vol. 1, Sec. 43, p. 58, circumstances may well afford exceptions to the rule, and evidence in the instant case establishes

that Bruén was acting on behalf of the corporation and was the personification of it.

This principle seems established in the case of Baruch v. W. B. Haggerty, Inc., 137 Fla. 799, 188 South. Rep. 797. There, an individual contracted to sell an interest in a corporation bearing his name. Later the corporation attempted the enforcement of the contract. The court decided that the corporation was a closed one and that the suit could be conducted in its name although the contract was entered into by the individual. It is pertinent to note that it was determined in the same controversy that the delivery of stock of no market value in a closed corporation could be enforced by the buyer by specific performance and the court pointed out in its opinion that inasmuch as the contract was entered into for the benefit of the corporation either it or the seller (sole stock owner) could maintain the suit and that it was not necessary that they join.

Applying this rule it would have been possible for the appellee to have maintained a suit on the contract based on the arrangement made with Bruen; therefore, by the same token, appellant was justified in his suit against appellee.

Our discussion of this point is directed to the theory of the appellee that the stock was owned outright by Bruen although the fair inference from the testimony is that he was only a nominal owner and held it for the purpose of accomplishing the objects for which the corporation was formed.

Our conclusion is that the burden that the plaintiff assumed of establishing the contract by more than a preponderance of the evidence was met and that the chancellor should have referred the matter back to the master for the purpose of taking testimony as to the value of the stock if

it appeared to him that the master's conclusion about the impossibility of actual delivery of the certificates was correct.

It is therefore, ordered that the decree be reversed and that the chancellor take or cause to be taken testimony as to the value of the stock and the accrued dividends and that a decree be entered in that amount in the event he should determine that it is not feasible for the corporation to deliver to the appellant certificates for two hundred and fifty shares of the original common stock of the corporation. If it appears that such stock may in fact be issued decree should be entered to that effect and for the amount of the accumulated dividends.

Reversed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON REHEARING

PER CURIAM.—Upon rehearing and due consideration it is ordered that the decree of this Court herein be modified so as to direct the entry of a decree by the chancellor awarding the relief ordered to the extent of one hundred shares of stock, and to direct that further consideration may be had and decree rendered upon appropriate proceedings on the claim for relief as to the additional shares of stock.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs specially.

TERRELL, C. J., and THOMAS, J., adhere to original opinion.

BUFORD, J. (concurring specially).—I concur in that part

of the *per curiam* order herein directing awarding relief as to the one hundred shares of stock but I think the record shows affirmatively that plaintiff is not entitled to any relief as to the remaining 150 shares of stock and that to this the chancellor should be affirmed.