100 So.2d 634 (1958)
Carl MANN and Marion Mann, Appellants,
v.
Mary K. THOMPSON et al., Appellees.
No. A-167.
District Court of Appeal of Florida. First District.
February 27, 1958.
Rehearing Denied March 13, 1958.
*635 Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellants.
Brannon, Brown, Smith & Norris, Lake City, for appellees.
Scruggs, Carmichael & Avera, Gainesville, for appellee Nat. Turpentine & Pulpwood Corp.
Caldwell, Pacetti, Robinson & Foster, West Palm Beach, for appellees Charles Boynton and Erle Boynton.
WIGGINTON, Judge.
This is an appeal from a final decree dismissing a complaint for specific performance of a lease and ordering the plaintiff-lessee to vacate the disputed premises.
The cause initially arose out of a series of negotiations beginning in 1953, and extending over a period of several years.
On May 15, 1953, the appellant, Carl Mann, entered upon a written agreement with Prudential Timber Company, a corporation represented in the transaction by its president and principal stockholder, A.C. Thompson, whereby Mann leased some 6500 acres of land in Levy County from the corporation at a stated annual amount per acre. In addition to providing for cancellation for certain specific reasons such as flagrant abuse of the land by the lessee, the lease, which was for a period of five years with option for renewal for a like term, contained a clause providing that:
"9. In case of sale of all, or part, of said land by Lessor, or in the event any of said land is required by Lessor for converting to pasture or for any other reason, this lease may be canceled, either in whole or in part, by Lessor, upon it's paying Lessee a proportionate amount of rental received for said land to be so released for the unexpired portion of the period for which rental had been paid plus a like proportionate amount of any monies which Lessor might then have on hand and which had been paid in advance by Lessee as above set forth. No such release shall become operative before six (6) months notice in writing is given to Lessee by Lessor * * *" (Emphasis supplied.)
Subsequent to May 15, 1953, and around January 1955, Thompson conceived the idea of entering the cattle business himself. To effectuate his plan he commenced negotiations with Mann and his son for the purpose of consummating a new agreement for the lease of some 35,000 acres, including the 6,500 acres covered by the 1953 lease. The new lease agreement contemplated that the Manns would stock the increased acreage with as many cattle as it would reasonably support, and that instead of a cash rental, Thompson would receive an agreed percentage of the annual calf crop. Those calves received by Thompson as rental were to be treated as his separate enterprise.
*636 Following several conferences between the parties, Thompson wrote a letter to Mann on March 7, 1955, relative to the terms of "* * * the cattle lease to be entered into * * *" and requesting Mann's suggestions as to the "general terms" of the proposed lease. Thompson concluded this letter by saying that on receiving Mann's suggestions "I will then write up the terms in a regular lease." Upon receipt of this letter Mann went into immediate possession of the land contemplated by the negotiations and commenced making certain improvements thereto. All this was done with Thompson's knowledge and apparent consent. Later, on April 12, 1955, Mann replied in writing to Thompson's letter and expressed agreement with the general terms of Thompson's proposal. Mann further stated: "There are only a few minor details which should be changed or added to. I will try to do this in my own way of writing. In the meantime * * * I have asked * * * a local attorney here * * * to draw up a rough draft like we talked about * * *" No further steps were taken by either party toward reaching a final agreement as to the exact terms and conditions to be incorporated in the final draft of the lease agreement. On or about May 26, 1955, Thompson was hospitalized because of a critical illness from which he ultimately expired on the following July 17th.
On February 10, 1956, Mann was notified in writing of the cancellation of the above-mentioned lease of May 15, 1953, by trustees of Prudential Timber Co., Inc. This notice was purportedly given under authority of Section 9 of the lease, and for the purpose of effecting delivery of possession of the subject lands to the National Turpentine and Pulpwood Corporation in accordance with a long term lease negotiated with that Corporation during January 1956. Mann was commanded to vacate the land not later than September 1, 1956. This notice was followed by several unsuccessful attempts by the Manns to secure recognition of what they insisted was a complete and binding lease of the 35,000 acres in question.
On July 19, 1956, the Manns filed a complaint in the Circuit Court of Levy County alleging that their negotiations with Thompson who was acting for Prudential Timber Co., together with the actions of the parties, resulted in a firm and binding lease of the entire 35,000 acres in accordance with the 1955 exchange of letters referred to above. The complaint prayed for a decree of specific performance and that the defendants be enjoined from any interference with the lease agreement. The defendants answered, denying the existence of a lease as a result of the 1955 negotiations, and alleging a lawful cancellation of the 1953 lease by notice given February 10, 1956, to vacate by September 1, 1956. This, for the purpose of fulfilling the lease agreement with National Turpentine and Pulpwood Corporation, who was also made a party defendant in the Manns' action.
Although copious testimony and evidence concerning the alleged 1955 lease was adduced by the parties at trial, we do not consider that any useful purpose would be served by a recital thereof in this opinion. It suffices to say there were numerous sharp conflicts on material points, and the evidence was such as to give considerable credence to the allegations of each party. The Chancellor conceived the principal issue to be whether the intent of Thompson was to consummate the alleged lease agreement before it was fully expressed and executed in a formal written instrument. It was his conclusion that such an intent was not shown by clear and convincing evidence; and that the alleged cancellation of the 1953 lease was valid. Having so concluded, the Chancellor entered his decree dismissing the cause and ordering surrender of the property to defendants. Both rulings are here assigned as error.
Specific performance of a contract will not be enforced unless the agreement *637 is clearly established.[1] To enforce performance of a parol contract to lease land, the agreement must be established by more than a mere preponderance of the evidence.[2] Even where the terms of the contract are clear, certain, and unambiguous, specific performance is not a matter of right, but rests in the sound discretion of the court to be determined from all the facts and circumstances.[3] And, while the evidence may well be such that it is subject to more than one interpretation, a reversal is not justified in the absence of manifest error clearly demonstrated.[4]
From our review of the evidence we are convinced that the Chancellor correctly conceived the controlling issue relative to the alleged 1955 lease agreement. The kernel of this issue necessarily concerns the existence or non-existence of a valid and binding contract. So long as any essential matters remain open for further consideration, there is no completed contract.[5] In order to create a contract it is essential that there be reciprocal assent to a certain and definite proposition.[6] When the parties intend that their negotiations be reduced to a formal writing, there is no binding contract until the writing is executed.[7] The Chancellor who had the exclusive privilege of viewing the witnesses found no intention on the part of the parties in the instant case to consummate the alleged agreement before all the terms and conditions had been fully determined and formalized in an appropriately executed written document. The negotiations having failed to ripen into a contract, there was nothing upon which to decree specific performance. This court has consistently adhered to the principle that it will not substitute its concept as to conflicting evidence, nor its judgment as to its weight or credibility, for those of the trial court, upon whom this duty and responsibility rests.[8] And it is for the foregoing reasons that the decree appealed from must be affirmed insofar as it denied specific performance.
We turn now to that portion of the controversy concerning the alleged cancellation of the 1953 lease, which was put at issue by defendant's answer asserting cancellation by notice in accordance with Section 9 of the lease heretofore quoted in this opinion. The Chancellor specifically found valid notice and termination and ordered the Manns removal from and surrender of the land within ninety days from the date of the final decree.
Appellants contend the lessor-appellees were without authority to cancel the 1953 lease for the sole purpose of leasing the property to a third party. Appellees, on the other hand, contend that the lease was subject to cancellation for any reason deemed sufficient by the Lessor. Therefore, we are chiefly concerned with an interpretation of the language appearing in Section 9 of the lease, and which provides for cancellation:
"* * * in case of sale * * * or in the event any of said land is required by lessor for converting to pasture or for any other reason."

There is no evidence in the record so far as we can determine, and none has been demonstrated, from which the intent of the *638 parties can be ascertained with certainty. Nor does the decree contain any specific finding as to the Chancellor's concept of the parties' intent.
It is clear from the provisions of disputed Section 9 that the lessor had the unqualified right to cancel in the event of a sale, or a need for converting the land to pasture for the lessor's cattle. The prime question presented for our determination is whether the language "or for any other reason" vested the lessor with an unrestricted right to cancel at any time, for any reason, whether or not such reason was related to a sale or the lessor's need for additional pasture. Appellants argue that the last quoted words are subject to the doctrine of ejusdem generis, and are therefore restricted to reasons related in kind to those previously stated within the section;[9] to-wit: sale or use by the lessor for pasture.
The Florida Supreme Court has held the doctrine of ejusdem generis, and the broader doctrine of noscitur a sociis, applicable in the construction of statutes, wills, contracts and other written documents.[10] In the Dunham case, the term "* * * or any other person" was held to be restricted by the preceding language in a statute which provided that "* * * if any factor, commission merchant, warehouse keeper * * * or any other person" convert certain bailed goods, such person was punishable for larceny. This statute was held applicable only to "any other person" engaged in the specified occupations or those following similar pursuits. The Noble case involved the construction of a restrictive covenant in a deed which provided that no hospital, store or mercantile building, public garage, filling station, stable, or other similar structure or business shall be erected on the land. The "or other * * *" provision was held to be limited under ejusdem generis, to businesses of a type related to those specified and, therefore, it did not prohibit use of the property for a private school.
The use of the words "or for any other reason", as used in the questioned lease, follows specific reasons for cancellation due to a sale of the lands or a need for all or part of the land by the lessor for pasture and, under the doctrine of ejusdem generis is properly restricted to "any other reason" related to those specified. There are numerous possible uses related to those enumerated in the lease which would constitute sufficient reasons for cancellation. Such a construction would not, however, include cancellation for the sole purpose of permitting the lessor to enter upon another, possibly more inviting lease with a third party.
It is elementary that documents of the dignity of a lease are to be construed in such a way as to give meaning to all the language contained therein.[11] Had the parties to the disputed lease intended that it could be cancelled at any time and for any reason whatsoever, then such language would have been appropriate without the need for specific and stated reasons. Appellees' interpretation would render the stated reasons justifying cancellation contained in the disputed section wholly unnecessary and meaningless
For the foregoing reasons we give little weight to Carl Mann's testimony on cross examination wherein he answered affirmatively to the question as to whether the lease itself provided for cancellation for any reason. It is our opinion that such was the only truthful response available for, indeed, that was the precise language of the disputed section. The issue is not what the lease said, but, rather, what it meant. As *639 to the former, the lease speaks for itself. Mann's affirmation of the obvious is no indication of the intent or meaning of the language used, nor is it controlling as to the legal effect of such language.
We, therefore, conclude that the Chancellor correctly determined the issue as to the alleged 1955 lease, but erred in holding the challenged notice and termination to be valid under the terms of the 1953 lease. For the reasons heretofore stated that portion of the Chancellor's decree which finds the cancellation proper and orders appellants to surrender to appellees possession of the land described in the 1953 lease is reversed. The cause is herewith remanded with directions to enter a decree consistent with the views herein expressed.
STURGIS, C.J., and FABISINSKI, L.L., A.J., concur.
NOTES
[1] Muller v. Gables Racing Ass'n, Inc., 142 Fla. 834, 196 So. 864.
[2] Miller v. Murray, Fla. 1953, 68 So.2d 594; Alexander v. Bess, 123 Fla. 713, 167 So. 533.
[3] See: Wood v. Hammel, 132 Fla. 164, 181 So. 145.
[4] Mese v. Dade Tire Co., Fla. 1957, 95 So.2d 587; Loew v. Friedman, Fla. 1955, 80 So.2d 672; Goldstein v. Stone, Fla.App. 1957, 96 So.2d 227.
[5] Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92.
[6] Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498.
[7] Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 So. 13.
[8] See: Carolina Lumber Co. v. Daniel, Fla.App. 1957, 97 So.2d 156.
[9] See: Black, Law Dictionary (4th ed. 1951).
[10] Dunham v. State, 140 Fla. 754, 192 So. 324, 325; Noble v. Kisker, 134 Fla. 233, 183 So. 836.
[11] See: Clark v. Clark, Fla. 1955, 79 So.2d 426; Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 83 Fla. 501, 92 So. 279.