HAVERFIELD, Judge.
Plaintiff-purchaser seeks review of an adverse final judgment in a case involving an option to purchase improved realty contained in a written lease. The lease was negotiated in 1964 between plaintiff and defendant’s predecessor in interest, Somerset Land, Inc. Somerset did not own the land in question at the time the original parties negotiated the lease, but had access to it. The agreement reached between plaintiff and Somerset stated that plaintiff would advance money to Somerset who would in turn purchase the property and construct a building that would be leased to plaintiff. Plaintiff and Somerset also agreed that an option for plaintiff to purchase the land and the building should be contained in the lease. The following is the option to purchase agreement contained in the lease:
“26. OPTION TO PURCHASE, FINANCING COVENANTS
At any time during the term of this Lease or any extention [sic] or renewal thereof, Tenant shall have the right to purchase the Landlord’s fee simple interest in the demised premises upon the following terms and conditions:
(a) The basic purchase price to be paid by Tenant shall be One Hundred and Seven Thousand Six Hundred and Thirty-seven Dollars and Forty Cents ($107,-637.40), part of which shall be paid by taking subject to (but not assuming) the first mortgage loan but not the accrued interest thereon which then encumbers the demised premises and assuming whatever original financing (lease or otherwise) which was undertaken in regard to the air conditioning system in the demised premises the balance of the basic purchase price as hereinafter adjusted shall be paid in cash and surrender of the balance of Tenant’s security deposit. The aforesaid basic purchase price shall be increased by Landlord’s settlement costs and costs of obtaining permanent financing which were incurred at the time of acquiring the demised premises and placing the permanent financing on the demised premises. The aforesaid basic purchase price shall be reduced by principal payments on the first mortgage which have been made by Landlord up to the date of closing of title and shall further *193 be reduced by payments made by Landlord in connection with the financing (by lease or otherwise) of the air conditioning system.”
After the land was acquired and construction on the building was begun, Somerset revealed to plaintiff that it lacked the necessary funds and credit for the purchase and installation of the air conditioning system in the building. The terms for the proposed air conditioning financing agreement revealed that the purchase price was Nine Thousand Five Hundred Dollars ($9,500.-00) plus financing costs to be paid in monthly installments over a period of five years. To alleviate the problem, plaintiff agreed to guarantee the air conditioning financing and further agreed to an increase in the rental to provide funds to Somerset to meet the air conditioning payments. The increase was reflected in paragraph 3 of the lease, which called for increased rental payments during the first five years of the ten year lease.
3. RENT
During the first five (5) years of the initial lease term, Tenant shall pay a rent of ELEVEN THOUSAND ONE HUNDRED EIGHTY-SIX DOLLARS AND SIXTY-FOUR CENTS ($11,186.64) per year, payable in equal monthly installments of NINE HUNDRED THIRTY-TWO DOLLARS AND TWENTY-TWO CENTS ($932.22) on the first day of each month. During the second five (5) years of the initial lease term and during any extension or renewal of the lease term, Tenant shall pay a rent of NINE THOUSAND NINTY [sic] -SIX DOLLARS AND SIXTY CENTS ($9,-096.60) per year, payable in equal monthly installments of SEVEN HUNDRED FIFTY-EIGHT DOLLARS AND FIVE CENTS ($758.05) on the first day of each month.”
Further evidence that the rental increase in the lessee’s rent for the first five years was for the purpose of meeting the payments for the air conditioning system is manifested in a letter from Somerset to Capital Film Labs, dated May 12, 1966:
“For and in consideration of Capital Film Labs, payment of $1060.00 on May 10, 1966 to Somerset Land, Inc. representing and advance payment of the first month’s and last four month’s lease payments on the air conditioning lease between Somerset Land, Inc. and A I C Financial Corp. of New York; it is agreed that effective August 1, 1970 Capital’s monthly rental payments will be reduced to $758.05 per month as stated in paragraph # 3 of lease effective January 1, 1966.
“It is further agreed that if Capital exercises it’s [sic] right to purchase it’s [sic] building and land as set forth in paragraph #26 of said lease, it will be entitled to and receive full credit of this payment when assuming or consumating [sic] the air conditioning lease between Standard Investment and Mortgage Co and A I C Financial Corp.”
In 1968 defendant acquired title to the subject property in a foreclosure action. In February 1970, after the air conditioning system had been fully paid for, plaintiff attempted to exercise its option to purchase under paragraph 26(a) of the lease. Both parties agreed that plaintiff had a right to exercise its option to purchase, but a dispute arose in the sale price concerning the agreed cost of the original financing of the air conditioning system. It was plaintiff’s position that it had already paid for the air conditioning through the increased rental for the first five years of the lease and, therefor, the cost of the air conditioning should not be included in the purchase price. Defendant maintained that the cost of the air conditioning should be included in the purchase price. The trial court rendered a final judgment not giving credit to purchaser for the air conditioning payment *194 and upholding the purchase price arrived at by defendant.
It goes without saying that a lease, like any other contract, should be construed to give effect to the intention of the parties. National Hotel, Inc. v. Koretzky, Fla. 1957, 96 So.2d 774; Blow v. Colonial Oil Co., Fla.App.1969, 225 So.2d 167. To accomplish this end the court must gather the meaning of the parties from all the language contained therein. Berwick Corp. v. Kleinginna Investment Corp., Fla.App. 1962, 143 So. 2d 684; Mann v. Thompson, Fla.App. 1958, 100 So.2d 634.
The terms of the lease, supplemented by documents and correspondence contained in the record on appeal, clearly show that it was the original parties’ intent to have plaintiff increase its rent for the subject premises during the first five years of the lease in order to finance the air conditioning system. Paragraph 26(a) states that the air conditioning financing was to be given treatment similar to the first mortgage loan. The purchase price was to be reduced by principal payments on the first mortgage and further reduced by payments made by the landlord in connection with the financing of the air conditioning. The air conditioning had been completely paid for at the time plaintiff exercised its option to purchase; therefore, pursuant to the terms of the lease, the basic purchase price should be reduced by this amount, to-wit: $10,040.
For the reasons stated, the judgment appealed is reversed and the cause is remanded for the entry of judgment in accordance with the views expressed.
Reversed and remanded.