STURGIS, Judge.
The appellant, George G. Tapper Company, Inc., defendant below, seeks reversal of a final decree which, upon the theory of equitable assignment of certain funds, adjudged the appellant to be jointly and severally liable with Burkett-Howard, Inc., its codefendant which is not a party to this appeal, for the obligation of the latter as maker of three collaterally secured promissory notes in favor of the appellee, Bank of Fort Walton, plaintiff below. The collateral security was by way of an assignment to the bank of progress payments accruing to the maker of the notes under its subcontract to perform for George G. Tapper Company, *9 Inc., part of a contract for the construction of a sewer project for the City of Fort Walton Beach, Florida.
The essential facts are: On December 19, 1955, George G. Tapper Company, Inc. (identified herein as the “Tapper Company”) and Burkett-Howard, Inc. (identified herein as the “Burkett-Howard Company”) as joint venturers contracted to construct a sewer system for the City of Fort Walton Beach, Florida. After commencing work on the project, the joint venturers entered into a written agreement which, as between the immediate pmties, 1) terminated their relation as joint venturers under the prime contract with the city and left the Tapper Company in the position of the sole prime contractor, 2) subcontracted a part of the project to the Burkett-Howard Company, 3) provided for monthly progress payments, based on monthly estimates, to be made by the Tapper Company to Burkett-Howard Company under the subcontract, and 4) contained the following provision upon which the appellant relies as affording to it a prior and superior interest in the estimates assigned by the Burkett-Howard Company to the appellee-bank:
“The sub-contractor * * * agrees to repay to the contractor, all expenditures and expenses incurred and chargeable to the prime contract since the said contract was let by the owner * * * which said sum the sub-contractor agrees to pay as follows: $2,-000.00 upon execution of this sub-contract; $6,000.00 to be deducted from the January 1956 estimate and the balance to be deducted in equal installments from the February, March and April estimates.”
The term “estimate” as used in the quoted provision clearly refers to the progress payments accruing to the subcontractor as elsewhere provided in the contract, a copy of which was filed in the office of the City Clerk at the City Hall in Fort Walton Beach.
After executing that agreement the Burk-ett-Howard Company approached the bank for a loan of money with which to meet its weekly payrolls on the subcontract, and thereunto procured the Tapper Company to deliver to the bank a letter, dated February 15, 1956, the body of which reads:
“Burkett-Howard, Incorporated are sub-contractors to us on the Fort Walton sewer extension system and has requested that I forward all estimates due them under our sub-contract to your bank to be credited to their account.
“I wish to advise that I will comply with their request and all such estimates due them based on their subcontract will be forwarded to your bank.”
The bank made such further inquiry and investigation as it deemed necessary preliminary to granting the loans to the Burkett-Howard Company, including, according to the testimony of the attorney handling the transaction in its behalf, examination of the subcontract on file with the city. Thus the bank had knowledge prior to making the loans, that the Burkett-Howard Company owed the Tapper Company money that was payable according to the subcontract referred to in the letter.
The loans to the subcontractor were as follows: February 24, 1956, $2,800; March 2,1956, $3,000; March 9,1956, $3,000. Each loan was evidenced by the subcontractor's promissory note in favor of the bank, ánd) was secured by the mentioned assignment of the progress payments (estimates) under its subcontract.
We take it to be evident, at least in retrospect, that without the quoted letter from the Tapper Company, coupled with the assignment to the bank by the maker of the notes of the “estimates” accruing to it under the subcontract, the bank would not have made any of the loans.
The question for determination is-whether the Tapper Company, by the men *10 tioned letter, made an equitable assignment to the bank of the total amount of the progress payments, otherwise known as “estimates”, accruing to the benefit of the Burk-ett-Howard Company under the subcontract, or whether, as the Tapper Company insists, the assignment is limited to only such part of the progress payments (“estimates”) as might be “due them [the subcontractor],” as the letter expresses it, after deducting the amounts payable by the Burkett-Howard Company to the Tapper Company in accordance with the herein-above quoted provision of the subcontract.
While there is evidence dehors the letter in support of appellant’s contention, the letter in itself is the essential evidence upon which liability must hinge, if at all; and the phrase “all such estimates due them based on their subcontract will be forwarded to your bank,” which is to some extent ambiguous, is the key by which the door to the real intention of the Tapper Company must be unlocked.
Construing the letter as a whole, it is apparent that the only efficient method by which the bank could ascertain what funds —in the nature of progress payments, “estimates”, or otherwise — would be available to the subcontractor and in turn applicable to the discharge of the promissory notes was by reference to the subcontract proper, and this was done by the bank through its attorney. As that document plainly detailed the factors upon which the progress payments (“estimates”) were based and the time when they became due and payable, and subjected them to the above-quoted provision which clearly imposed a charge against those payments in favor of the Tapper Company, it follows that the words employed in the letter, “due them based on their subcontract,” in common parlance assume a special significance when considered in the light of the rule that the entire transaction, rather than isolated parts of it, must be taken into account in determining the over-all purpose and effect. Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 1922, 83 Fla. SOI, 92 So. 279. So considering the entire transaction, we are forced to the conclusion that the letter amply identified the contract, that it hinged the commitment of the writer to the over-all provisions of the contract, that the appellee-bank had advance notice of appellant's prior and reserved rights under the contract, and that appellant’s commitment to appellee rendered it liable to the latter only to the extent of the balance, if any, of the progress payments (“estimates”) after appellant had deducted therefrom the amounts payable to the appellant under the quoted provision of the contract.
The final decree appealed is reversed to the extent that it imposes upon the appellant an unlimited joint and several liability with the maker of the subject notes in respect to the indebtedness evidenced thereby. The extent of appellant’s liability is to account and pay over to the appellee such balance, if any, of the estimates due Burkett-Howard, Inc., which came into appellant’s hands and which are not applicable on account of the indebtedness due by Burkett-Howard, Inc., to the appellant and payable therefrom under the terms of the contract. In all other respects the subject final decree continues in force and effect. This cause is remanded for entry of an appropriate order in accordance herewith.
Reversed in part with direction.
WIGGINTON, C. J„ and CARROLL, DONALD, J., concur.