178 So.2d 217 (1965)
FRED S. CONARD CONSTRUCTION COMPANY, a corporation of Florida, Appellant,
v.
The EXCHANGE BANK OF ST. AUGUSTINE, a state banking corporation, the Fidelity and Casualty Company of New York, a corporation of New York, Clement A. Solana, and Victor E. Raymos, as Trustee in Bankruptcy in the matter of Clement Alfonso Solana and Jacqueline Juanita Solana, his wife, Bankrupts, Appellees.
No. G-194.
District Court of Appeal of Florida. First District.
August 19, 1965.
Rehearing Denied September 30, 1965.
*218 W.O. Birchfield, of Milam, Ramsay & Martin, Jacksonville, for appellant.
Upchurch & Upchurch, St. Augustine, for appellee.
STURGIS, Judge.
Fred S. Conrad Construction Company, defendant below, appeals from a summary final judgment in favor of the plaintiff, The Exchange Bank of St. Augustine (appellee).
The appellee bank brought an action at law against appellant and others to recover an alleged indebtedness arising under the following circumstances:
The appellant, a contractor, agreed to construct for Wise Potato Chip Company a manufacturing plant in St. Augustine, Florida, and later subcontracted to Clement A. Solana certain masonry work on the plant. The subcontract provided in pertinent part:
"The Sub-Contractor agrees to provide the work required to complete and will complete the following described items of work in connection with the erection of Wise Potato Chip Company Manufacturing Plant, St. Augustine, Florida, and will furnish * * * all necessary labor to complete installation of all masonry products."
* * * * * *
"* * * the payment of the consideration is executory and conditioned upon completion of this contract and completion of the work as above specified."
* * * * * *
"* * * the unpaid balance of the price at all times [shall] be sufficient in the judgment of the * * * Contractor, to complete the work and to pay any unpaid liens or claims for which said Contractor is responsible hereunder."
* * * * * *
"No progress payment made under this contract shall be conclusive evidence of the performance of this contract either wholly or in part, and no payment shall be construed to be acceptance of defective work or improper materials."
Solana then assigned to the appellee bank "all monies due or to become due on that certain contract between * * * [Solana] and * * * [appellant] * * * dated April 15, 1963," a true copy of which *219 was attached to and by reference made a part of the assignment. Appellant then accepted said assignment and agreed to pay to appellee "all sums due or to become due Clement A Solana, under its contract * * * dated April 15, 1963." There was no modification of said subcontract or the contract of assignment.
It was customary at the end of each week for Solana and a representative of appellant to calculate the work done by Solana during that week and record their computations on a form entitled "Masonry Work Order" which indicated the amount payable to Solana under a caption entitled "This Draw," and it was Solana's custom to take this document to the bank and borrow almost the exact amount shown under said item, giving his promissory note therefor. It was customary for the bank to then attach a copy of the "Masonry Work Order" to duplicate copies of a covering form letter and mail same to appellant with a request that it return a copy of the form letter after noting thereon the date received, by whom approved, and the date payment might be expected. It is pertinent at this juncture to note that prior to such mailing the bank in each instance had already consummated its loan to Solana.
Acting pursuant to the bank's letters, appellant remitted to the bank the amounts indicated as "This Draw" on the first five "Masonry Work Orders" transmitted, but refused to remit funds pursuant to such letters of the bank relating to the next eight "Masonry Work Orders" in point of time, totaling $4,720.00. This amount was admittedly due by Solana to the bank for money borrowed on the strength of said assignment and evidenced by his several 7% promissory notes in favor of the bank.
The appellant, in answer to appellee's second amended complaint, admitted it had refused to pay the said amount alleged to be due, and asserted that it was withholding said amount in accordance with the terms and conditions of its subcontract with Solana; and appellant also alleged, in substance, that Solana had breached his contract with appellant and that under the terms thereof appellant was entitled to retain such amount as would be sufficient to complete the work subcontracted to Solana in accordance with the terms and conditions of the contract.
It was established at the hearing upon appellee's motion for summary judgment that Solana defaulted in his contract with appellant, who got another masonry contractor in to finish the job, and that the resulting cost to appellant exceeded the amount retained by it under the subcontract with Solana.
Appellant's motion for leave to file a counterclaim against the appellee was denied.
By this appeal we are called on to decide: First. Whether the trial court erred in holding appellant liable to the appellee bank pursuant to Solana's assignment of "monies due or to become due" to Solana under his subcontract with appellant, to which the assignment was subject, and where it appears that in the absence of such assignment Solana would unquestionably be liable to appellant for damages suffered by virtue of Solana's admitted default under the contract and that appellant would have been entitled to withhold the subject payments to Solana and to apply the same on account of the damages sustained by Solana's default.
It is fundamental that the assignee of a contract or non-negotiable chose in action occupies the same position as its assignor and is subject to the same equities, conditions and defenses that could have been asserted against the assignor. Florida East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 So. 622, 626, 70 A.L.R. 506 (1930); Birmingham Trust & Savings Co. v. Jackson County Mill Co., 41 Fla. 498, 27 So. 43, 45 (1899); 3 Fla.Jur., Assignments, Sec. 25. These principles were applied in Geo. G. Tapper Company, Inc. v. Bank of Fort Walton, 117 So.2d 8 (Fla.App. 1959), *220 holding that the contractor's liability to the assignee bank was limited to the balance of the approved estimates of amounts payable to the subcontractor, less all amounts for which the subcontractor was liable to the contractor under the terms of the contract; and referring to a letter of the contractor to the bank recognizing the assignment, upon which the bank relied to fix liability, we observed that the only efficient method by which the bank could ascertain what funds would be available to the subcontractor and in turn applicable to the discharge of the promissory notes held by the bank was by having reference to the subcontract proper, and in that connection said:
"As that document plainly detailed the factors upon which the progress payments (`estimates') were based and the time when they became due and payable, and subjected them to the above-quoted provision which clearly imposed a charge against those payments in favor of the Tapper Company, it follows that the words employed in the letter, `due them based on their subcontract,' in common parlance assume a special significance when considered in the light of the rule that the entire transaction, rather than isolated parts of it, must be taken into account in determining the over-all purpose and effect. Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 1922, 83 Fla. 501, 92 So. 279. So considering the entire transaction, we are forced to the conclusion that the letter amply identified the contract, that it hinged the commitment of the writer to the over-all provisions of the contract, that the appellee-bank had advance notice of appellant's prior and reserved rights under the contract, and that appellant's commitment to appellee rendered it liable to the latter only to the extent of the balance, if any, of the progress payments (`estimates') after appellant had deducted therefrom the amounts payable to the appellant under the quoted provision of the contract."
In the case on review appellant's acceptance of the assignment and agreement "to pay all sums due or to become due Clement A. Solana, under its contract with him" (emphasis added) neither enlarged nor added dignity to appellee's rights as assignee of the contract, a copy of which was made a part of the assignment given to the appellee. Appellant's commitment, therefore, was subject to the over-all provisions of the subcontract with Solana in the same sense as the contractor in Geo. G. Tapper Company, Inc. v. Bank of Fort Walton, supra.
Appellee strongly relies on Florida Builders, Inc. v. Florida Nat. Bank & Trust Co. at West Palm Beach, 161 So.2d 248 (Fla. App. 1964), but appellant insists and we agree that said case is not in point. The decision therein does not indicate that the court was confronted with a situation where, as in this case, payments to the assignee were conditioned upon completion of the work called for by the contract, nor does it appear that the assignee had notice of the terms and conditions of the contract giving rise to the rights assigned, or that the contractor's acceptance was limited to payments due under the contract. Appellee asserts that a research of the court file in said case develops overwhelming similarities between the facts there involved and those in the case on review. That type of research is not required of counsel and has no value as precedent, which depends solely upon what may be gleaned from the reported decision.
The facts adduced on the motion for summary judgment in this cause conclusively demonstrate that appellant had a contractual right to withhold all payments accruing to Solana if in its judgment there were not sufficient funds in its possession to complete the work called for by said subcontract. The proofs submitted by appellant reveal that in order to complete Solana's subcontract appellant found it necessary, by reason of Solana's abandonment thereof, to expend more than it had *221 retained under said provision. This presents a clear issue of fact as to whether appellant breached the contract or abused its right to withhold funds due Solana thereunder.
Appellee contends, inter alia, that the proofs demonstrate that appellant is estopped to deny appellee's claim of right to recover the amounts it loaned to Solana on the basis of "This Draw" specified on the weekly "Masonry Work Order" forms indicating the labor performed by Solana and accepted by appellant. In support of this contention appellee insists that it relied upon such statements in making the advancements to Solana, that appellant had accepted and delivered Solana's labor to Wise Potato Chip Company (the owner for whom the plant was constructed), and that Solana's labor for which said weekly memoranda were given did not have to be redone, torn out, or otherwise changed; further, that appellant "probably made draws periodically against the final prime contract price of which Solana's labor was a part." This argument is specious because, assuming these matters to be uncontradicted, it does not follow that under other facts, which are contradicted, there exists no issue of material fact to be resolved by the jury.
The fact that appellant had on the initial five occasions it received from appellee the covering letter and request remitted to appellee the amounts stated in the accompanying "Masonry Work Order" as "This Draw" is incompetent in itself to establish as a matter of law any obligation on the part of appellant to renounce its rights under the contract with Solana. We find nothing that would have prevented the appellee from committing the appellant to an unconditional obligation to remit such payments had it chosen to exact that requirement as a condition to making the subject loans to Solana. Moreover, it clearly appears that the advances to Solana were not made in the light of any pre-existing obligation of appellant to make such remittance, but solely on the strength of the contract of assignment and acceptance, both of which were made subject to appellant's subcontract with Solana, which permitted appellant under the facts before the court on the motion for summary judgment to retain the funds which appellee seeks to recover.
An established custom or trade usage respecting a commercial transaction may annex incidents to a written contract, and a contract involving such a transaction should be interpreted in the light of such custom or usage. Carr v. Stockton, 84 Fla. 69, 92 So. 814 (1922). The responsibility for deciding facts presented as to such custom or trade usage is normally one to be submitted to a jury rather than to be determined by a court in summary proceedings such as was had in the instant cause. The facts presented here going toward such custom or trade usage clearly fall within the jury province and upon proper instruction should be submitted to the jury upon trial of the issues.
We have considered the second point presented by appellant and find that the trial court was not in error in refusing to permit appellant to file the subject counterclaim.
For the reasons stated, the summary judgment appealed is reversed and this cause is remanded for proceedings consistent herewith.
RAWLS, C.J., concurs.
WIGGINGTON, J., dissents.
WIGGINGTON, Judge (dissenting).
I regret that I am unable to agree with my colleagues either on the principles of law or the conclusion set forth in the majority opinion.
This case is before the court on an appeal from a summary final judgment. The facts are simple, uncomplicated, and there *222 is no contention on the part of either party that a dispute exists in any of the material facts on which the judgment appealed is based. Although the majority opinion appears to create an illusion that there does exist an issue of fact to be resolved by a jury, such is not the case and is not the basis on which the majority opinion reverses the judgment appealed.
Appellant, Fred S. Conrad Construction Company, entered into a contract to construct a commercial building in St. Augustine. It subcontracted with one Clement A. Solana the labor required to perform the masonry work on the building. Solana was to furnish no materials going into the work, but only the labor necessary to install the brick and block required under the contract. The amount to be paid Solana by Conrad was a stipulated amount for installing the various types of brick and block going into the building under an arrangement more commonly known and referred to as a piecework basis. Payment to Solana under the contract was to be made on a monthly basis based upon the labor performed and accepted by the job inspector employed by Conrad. The contract contained the usual standard provision that the unpaid balance payable to Solana should at all times be sufficient to complete the work and to pay any unpaid liens or claims for which Solana is responsible.
Solana assigned to appellee, The Exchange Bank of St. Augustine, all moneys due or to become due him under his subcontract with Conrad. Conrad was notified of this assignment and accepted it in writing, agreeing to pay the Bank all sums due or to become due Solana under his subcontract.
In order for Solana to perform his subcontract, it was necessary that he arrange for necessary financing through the Bank. The procedure adopted by them consisted of the following arrangements. At the end of each week Conrad's superintendent on the job calculated the amount of work performed by Solana under his contract, recording his computations on a form entitled "Masonry Work Order." This form reflected the amount of work done, the amount then due Solana under his subcontract, and was signed by Conrad's superintendent. Each week Solana presented to the Bank the work order, and the Bank loaned Solana the amount shown to be due him, which money so borrowed in this fashion was used by Solana in meeting his payroll on the job. Each time such loan was made, the Bank attached a copy of the work order form to a covering letter prepared in duplicate which it mailed to Conrad with the request that the latter endorse on one of the copies the date it was received, by whom it was approved, and when payment due under the work order could be expected to be made. In each instance Conrad received the letter transmitted to it by the Bank, endorsed on it the requested information, including the date on which the Bank might expect payment. This procedure was followed for a period of thirteen weeks during all of which Solana received from the Bank loans and advances equal to the amount shown to be earned by and due to him under his subcontract. Pursuant to this arrangement Conrad paid to the Bank the amounts due Solana under the first five work orders on which loans were made. When Conrad failed to send the Bank the amounts due by it under the sixth through thirteenth consecutive work orders, an official of the Bank contacted Conrad who gave every assurance that the amounts assigned to the Bank by Solana had been earned by Solana and would be paid to the Bank under its assignment. Furthermore, Conrad verified the amounts due under each of the unpaid work orders as being correct. Because of Conrad's failure to pay the amounts due by it to Solana under the sixth through thirteenth work orders, the Bank refused to make any further loans to Solana until the overdue payments by Conrad were paid. Being unable to secure financing, Solana was unable to continue performance under his labor contract with Conrad, thereby defaulting thereunder.
*223 Subsequent demand by the Bank on Conrad for payment of the amounts due it under its assignment from Solana resulted in a refusal by Conrad to pay any further amounts on the pretext that Solana had defaulted, and the amounts due him were applied toward and absorbed in the cost of completing Solana's contract by another. It was on the basis of the foregoing undisputed facts that the trial court entered summary judgment in favor of the Bank for the total amount earned by Solana prior to default, which amount had been assigned to the Bank with Conrad's knowledge and consent, and upon the latter's promise to pay.
The financing arrangement entered into as reflected by the record in this case is a standard procedure frequently followed in Florida by financial institutions and contractors engaged in construction work. There is nothing unusual or unique in the arrangement which the prime contractor, subcontractor, and Bank entered into in this case. The conclusion reached by the majority opinion not only results in an injustice to the parties to this cause by application of an incorrect principle of law, but if sustained will cast serious doubt on the validity of an untold number of loans made by financial institutions to contractors and subcontractors engaged in work throughout Florida.
An almost identical situation in all material respects was present in the case of Florida Luilders, Inc. v. Florida National Bank & Trust Company at West Palm Beach.[1] In that case the Third District Court of Appeal, speaking through Chief Judge Barkdull, applied the correct principle of law which governs the relationship and obligation of parties to agreements such as those which were entered into in the case sub judice. In Florida Builders it was held that the periodic estimates of the contract price due the subcontractor and earned by him prior to default were payable to the bank which had financed the subcontractor under an assignment of the amounts to become due him, which assignment had been made with the knowledge and consent of the prime contractor. While the majority opinion attempts to distinguish that case from the one sub judice by raising a question not resolved by the facts revealed in the reported decision, at the same time it refuses to consider the representations made by counsel for the Bank that they have examined the original file and find from the record therein the presence of unreported facts which dispose of the question raised by the majority and make the Florida Builders case controlling in the case which we now consider.
In holding as it does that Conrad could lawfully withhold from the Bank earned estimates assigned to it by Solana because the latter defaulted under his subcontract, the majority opinion ignores salient facts which in my judgment should control our decision. It must be recognized that the eight estimates of amounts earned by Solana under his subcontract were due and payable to him prior to the time he was forced to default under his contract because of Conrad's refusal to comply with its obligation to make remittances of earned estimates on a monthly basis. Conrad was fully informed of Solana's assignment to the Bank and the fact that the latter was advancing to Solana funds vitally necessary in order for Solana to perform his written obligations with Conrad. These loans were made pursuant to a course of conduct established by the parties extending over the period of time when the first five estimates earned by Solana and assigned to the Bank were paid by Conrad in accordance with its agreement. Conrad received full benefit of all sums loaned to Solana by the Bank, since these amounts were used in meeting Solana's payroll for work performed in the installation of the brick and block in the building under construction. In each of the eight instances, Conrad agreed not *224 only as to the amount then due Solana for work satisfactorily performed, but also stated the day on which the Bank could expect payment on the work order for the money loaned by it to Solana. When Conrad endorsed and returned the covering form letter to the Bank approving the previous week's work order showing the amount then due Solana, and stating the date on which it would be paid, such action constituted an agreement by Conrad to pay the Bank the amount stipulated in the letter. The considerations flowing to Conrad for this agreement was the value of the work performed by Solana under his contract with Conrad, the cost of which was financed by the Bank. I perceive no justification for holding that under the circumstances of this case Conrad is relieved from its agreement to pay the Bank the amounts earned by Solana and assigned to the Bank with Conrad's knowledge and consent, merely because Solana later defaulted in the performance of his subcontract with Conrad.
The majority opinion has cited this Court's decision in the Tapper case[2] as support for the conclusions it reaches herein. In the Tapper case the bank loaned money to the subcontractor on an assignment of the amounts to become due it under entirely different circumstances from those present in the case sub judice. In Tapper, the subcontract specifically provided that the subcontractor would receive no amounts earned by him under the subcontract until after the prime contractor had been repaid from earned estimates the stipulated amount due it by the subcontractor at the time the contract was executed. When the bank accepted an assignment of the amounts to become due the sub-contractor as a basis for loans to him, the bank had full knowledge that no amounts would be payable under the assignment until the prime contractor had been fully reimbursed. In that case the subcontractor defaulted before his earned estimates were sufficient in amount to reimburse the prime contractor in accordance with their agreement. This being the case, no sums ever became payable to the bank under its assignment and we therefore held the bank had no cause of action against Tapper for such sums as the subcontractor had actually earned under his contract. There is no such factual situation present in the case sub judice, and our decision in Tapper has no bearing whatever on the decision which should be rendered in this case.
The factual situation present in the case sub judice is somewhat dissimilar from that present in the recent decision of Boulevard National Bank of Miami v. Air Metal Industries, Inc.[3] decided by the Supreme Court. It is my view, however, that the assignment to the Bank by Solana of the amounts earned and payable under the subcontract, with notice of such assignment being given to and accepted by Conrad, was an effective transfer and delivery of possession of his account by Solana to the Bank and the transfer thereby became binding on Conrad consistent with the spirit and intent of the holding announced in the Boulevard National Bank of Miami case.
For the reasons and upon the authorities above cited, I would affirm the summary judgment appealed.
NOTES
[1] Florida Builders, Inc. v. Florida National Bank & Trust Company at West Palm Beach, (Fla.App. 1964) 161 So.2d 248.
[2] George G. Tapper Company, Inc. v. Bank of Fort Walton, (Fla.App. 1959) 117 So.2d 8.
[3] Boulevard National Bank of Miami v. Air Metal Industries, Inc., et al., (Fla. 1965) 176 So.2d 94.