WIGGINTON, Judge
(dissenting).
I regret that I am unable to agree with my colleagues either on the principles of law or the conclusion set forth in the majority opinion.
This case is before the court on an appeal from a summary final judgment. The facts are simple, uncomplicated, and there *222 is no contention on the part of either party that a dispute exists in any of the material facts on which the judgment appealed is based. Although the majority opinion appears to create an illusion that there does exist an issue of fact to be resolved by a jury, such is not the case and is not the basis on which the majority opinion reverses the judgment appealed.
Appellant, Fred S. Conrad Construction Company, entered into a contract to construct a commercial building in St. Augustine. It subcontracted with one Clement A. Solana the labor required to perform the masonry work on the building. Solana was to furnish no materials going into the work, but only the labor necessary to install the brick and block required under the contract. The amount to be paid Solana by Conrad was a stipulated amount for installing the various types of brick and block going into the building under an arrangement more commonly known and referred to as a piecework basis. Payment to Solana under the contract was to be made on a monthly basis based upon the labor performed and accepted by the job inspector employed by Conrad. The contract contained the usual standard provision that the unpaid balance payable to Solana should at all times be sufficient to complete the work and to pay any unpaid liens or claims for which Solana is responsible.
Solana assigned to appellee, The Exchange Bank of St. Augustine, all moneys due or to become due him under his subcontract with Conrad. Conrad was notified of this assignment and accepted it in writing, agreeing to pay the Bank all sums due or to become due Solana under his subcontract.
In order for Solana to perform his subcontract, it was necessary that he arrange for necessary financing through the Bank. The procedure adopted by them consisted of the following arrangements. At the end of each week Conrad’s superintendent on the job calculated the amount of work performed by Solana under his contract, recording his computations on a form entitled “Masonry Work Order.” This form reflected the amount of work done, the amount then due Solana under his subcontract, and was signed by Conrad’s superintendent. Each week Solana presented to the Bank the work order, and the Bank loaned Solana the amount shown to be due him, which money so borrowed in this fashion was used by Solana in meeting his payroll on the job. Each time such loan was made, the Bank attached a copy of the work order form to a covering letter prepared in duplicate which it mailed to Conrad with the request that the latter endorse on one of the copies the date it was received, by whom it was approved, and when payment due under the work order could be expected to be made. In each instance Conrad received the letter transmitted to it by the Bank, endorsed on it the requested information, including the date on which the Bank might expect payment. This procedure was followed for a period of thirteen weeks during all of which Solana received from the Bank loans and advances equal to the amount shown to be earned by and due to him under his subcontract. Pursuant to this arrangement Conrad paid to the Bank the amounts due Solana under the first five work orders on which loans were made. When Conrad failed to send the Bank the amounts due by it under the sixth through thirteenth consecutive work orders, an official of the Bank contacted Conrad who gave every assurance that the amounts assigned to the Bank by Solana had been earned by Solana and would be paid to the Bank under its assignment. Furthermore, Conrad verified the amounts due under each of the unpaid work orders as being correct. Because of Conrad’s failure to pay the amounts due by it to Solana under the sixth through thirteenth work orders, the Bank refused to make any further loans to Solana until the overdue payments by Conrad were paid. Being unable to secure financing, Solana was unable to continue performance under his labor contract with Conrad, thereby defaulting thereunder.
*223 Subsequent demand by the Bank on Conrad for payment of the amounts due it under its assignment from Solana resulted in a refusal by Conrad to pay any further amounts on the pretext that Solana had defaulted, and the amounts due him were applied toward and absorbed in the cost of completing Solana’s contract by another. It was on the basis of the foregoing undisputed facts that the trial court entered summary judgment in favor of the Bank for the total amount earned by Solana prior to default, which amount had been assigned to the Bank with Conrad’s knowledge and consent, and upon the latter’s promise to pay.
The financing arrangement entered into as reflected by the record in this case is a standard procedure frequently followed in Florida by financial institutions and contractors engaged in construction work. There is nothing unusual or unique in the arrangement which the prime contractor, subcontractor, and Bank entered into in this case. The conclusion reached by the majority opinion not only results in an injustice to the parties to this cause by application of an incorrect principle of law, but if sustained will cast serious doubt on the validity of an untold number of loans made by financial institutions to contractors and subcontractors engaged in work throughout Florida.
An almost identical situation in all material respects was present in the case of Florida Builders, Inc. v. Florida National Bank & Trust Company at West Palm Beach.[1] In that case the Third District Court of Appeal, speaking through Chief Judge Barkdull, applied the correct principle of law which governs the relationship and obligation of parties to agreements such as those which were entered into in the case sub judice. In Florida Builders it was held that the periodic estimates of the contract price due the subcontractor and earned by him prior to default were payable to the bank which had financed the subcontractor under an assignment of the amounts to become due him, which assignment had been made with the knowledge and consent of the prime contractor. While the majority opinion attempts to distinguish that case from the one sub judice by raising a question not resolved by the facts revealed in the reported decision, at the same time it refuses to consider the representations made by counsel for the Bank that they have examined the original file and find from the record therein the presence of unreported facts which dispose of the question raised by the majority and make the Florida Builders case controlling in the case which we now consider.
In holding as it does that Conrad could lawfully withhold from the Bank earned estimates assigned to it by Solana because the latter defaulted under his subcontract, the majority opinion ignores salient facts which in my judgment should control our decision. It must be recognized that the eight estimates of amounts earned by So-lana under his subcontract were due and payable to him prior to the time he was forced to default under his contract because of Conrad’s refusal to comply with its obligation to make remittances of earned estimates on a monthly basis. Conrad was fully informed of Solana’s assignment to the Bank and the fact that the latter was advancing to Solana funds vitally necessary in order for Solana to perform his written obligations with Conrad. These loans were made pursuant to a course of conduct established by the parties extending over the period of time when the first five estimates earned by Solana and assigned to the Bank were paid by Conrad in accordance with its agreement. Conrad received full benefit of all sums loaned to Solana by the Bank, since these amounts were used in meeting Solana’s payroll for work performed in the installation of the brick and block in the building under construction. In each of the eight instances, Conrad agreed not *224 only as to the amount then due Solana for work satisfactorily performed, but also stated the day on which the Bank could expect payment on the work order for the money loaned by it to Solana. When Conrad endorsed and returned the covering form letter to the Bank approving the previous week’s work order showing the amount then due Solana, and stating the date on which it would be paid, such action constituted an agreement by Conrad to pay the Bank the amount stipulated in the letter. The considerations flowing to Conrad for this agreement was the value of the work performed by Solana under his contract with Conrad, the cost of which was financed by the Bank. I perceive no justification for holding that under the circumstances of this case Conrad is relieved from its agreement to pay the Bank the amounts earned by Solana and assigned to the Bank with Conrad’s knowledge and consent, merely because Solana later defaulted in the performance of his subcontract with Conrad.
The majority opinion has cited this Court’s decision in the Tapper case[2] as support for the conclusions it reaches herein. In the Tapper case the bank loaned money to the subcontractor on an assignment of the amounts to become due it under entirely different circumstances from those present in the case sub judice. In Tapper, the subcontract specifically provided that the subcontractor would receive no amounts earned by him under the subcontract until after the prime contractor had been repaid from earned estimates the stipulated amount due it by the subcontractor at the time the contract was executed. When the bank accepted an assignment of the amounts to become due the subcontractor as a basis for loans to him, the bank had full knowledge that no amounts would be payabl 3 under the assignment until the prime contractor had been fully reimbursed. In that case the subcontractor defaulted before his earned estimates were sufficient in amount to reimburse the prime contractor in accordance with their agreement. This being the case, no sums ever became payable to the bank under its assignment and we therefore held the bank had no cause of action against Tapper for such sums as the subcontractor had actually earned under his contract. There is no such factual situation present in the case sub judice, and our decision in Tapper has no bearing whatever on the decision which should be rendered in this case.
The factual situation present in the case sub judice is somewhat dissimilar from that present in the recent decision of Boule-' vard National Bank of Miami v. Air Metal Industries, Inc.[3] decided by the Supreme Court It is my view, however, that the assignment to the Bank by Solana of the amounts earned and payable under the subcontract, with notice of such assignment being given to and accepted by Conrad, was an effective transfer and delivery of possession of his account by Solana to the Bank and the transfer thereby became binding on Conrad consistent with the spirit and intent of the holding announced in the Boulevard National Bank of Miami case.
For the reasons and upon the authorities above cited, I would affirm the summary judgment appealed.

. Florida Builders, Inc. v. Florida National Bank & Trust Company at West Palm Beach, (Fla.App.1964) 161 So.2d 248.

. George G. Tapper Company, Inc. v. Bank of Fort Walton, (Fla.App.1959) 117 So. 2d 8.

. Boulevard National Bank of Miami v. Air Metal Industries, Inc., et al., (Fla.1965) 176 So.2d 94.