McCAIN, Justice
(dissenting):
I must respectfully dissent.
Dickerson subcontracted a portion of its work on a road building contract, referred to as the Emerson Street project, to Row-ell on January 4, 1967. Thereafter, Rowell assigned his rights to the monies due him under the referenced contract to the Central National Bank of Jacksonville. Dickerson consented to the assignment.
On or about September 21, 1967, Dickerson executed a second subcontract with Rowell on another road building project in Columbia County, referred to as the Columbia project.
Subsequently, Rowell defaulted on both subcontracts which resulted in Dickerson having to complete them. The Emerson Street project was completed at a $14,000 profit to Rowell and the Columbia project was completed at a $100,000 loss to Dickerson.
Federal Deposit Insurance Corporation, referred to as FDIC, became the successor assignee (through the Central National Bank of Jacksonville) to Rowell’s proceeds, if any, from the Emerson Street project. Dickerson refused to pay and asserted its rights to a setoff of profits on the Emerson Street project against the losses sustained on the Columbia project.
FDIC filed suit, issue was joined and the trial court entered judgment in favor of FDIC. This judgment was affirmed on appeal to the District Court of Appeal, First District, opinion reported at 244 So.2d 748 (1971).
Thus, the issue for review is whether Dickerson, as prime contractor, is entitled to setoff against FDIC (Rowell’s ultimate assignee on the Emerson Street project) for its losses sustained on the Columbia project directly attributable to Rowell’s default. Accordingly, the wording of the Emerson Street subcontract and its assignment become meaningful.
The subcontract, referred to above, among other things, contains the following provisions:
“ARTICLE XII. COMPLETION OF WORK BY CONTRACTOR.
“ . . . Upon the taking over of the work by the CONTRACTOR as herein pro *522 vided for, . . . any monies due or that may become due the SUBCONTRACTOR under this agreement will he withheld and may be applied by the CONTRACTOR to payments for labor, materials, supplies and equipment used in the prosecution of the work ... or to the payment of any sums due to the CONTRACTOR by the SUBCONTRACTOR under any other agreement or contract or on account of any damages suffered by the CONTRACTOR by reason of any breach of such agreements or contract by the SUBCONTRACTOR.” (Emphasis supplied)
“ARTICLE XIX. FINAL PAYMENT.
“Upon the completion of the original contract and payment therefor in full by the Principal, the SUBCONTRACTOR will be paid the remaining amount due SUBCONTRACTOR under this agreement. Except that any remaining amount due the SUBCONTRACTOR may be offset against or applied to the payment of any sum due the CONTRACTOR by the SUBCONTRACTOR under this or any other agreement or by reason of the breach or either . . .” (Emphasis supplied)
“ARTICLE XXIII.
“It is mutually agreed that this agreement shall bind the heirs, executors, administrators, successors and assigns of the parties hereto.”
The wording of the assignment under consideration contains the following provision:
“. . . in arriving at the net amount due to the assignee of this Contract, the Central National Bank of Jacksonville, Dickerson, Inc. shall have the right to deduct any monies due by Rowell Construction company for any claim or claims for taxes, either State or Federal, and Dickerson, Inc. also has the right to deduct any monies due Rowell Construction Company on any claim or claims for labor, or supplies or materials or any other bill or expense of any nature that arises out of the fob and contract with Dickerson, Inc. prior to paying out any money to Assignee herein. (Emphasis supplied.)
Examination of the quoted contractual provisions, when read in their entirety, leaves the inescapable conclusion that both the trial court and District Court of Appeal erred in denying Dickerson’s right to a setoff, thereby creating conflict with our decision in Florida East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 So. 622 (1930), as follows:
“The bank, as Eno’s assignee, occupies the same position as did Eno with respect to the moneys, having the same rights, and being subject to the same equities, conditions, and defenses, the assignment not being a negotiable instrument. The mere assignment ‘of all sums due and to become due the contractor’ in and of itself creates no different or other liability of the owner to the assignee than that which existed from the owner to the assignor . . .”
The District Court of Appeal, through use of the statement “ . . . The language of the assignment itself expressly contemplates payment of the Emerson Street contract price and provides that Dickerson shall pay to the assignee . . . only the net amount due under this contract . . . (Emphasis supplied)”, apparently concluded that the assignment expressly limited Dickerson’s right of setoff to those sums accruing under only the Emerson Street subcontract.
Contrariwise, the assignment refers to Dickerson’s right to deduct “. . . any monies due Rowell Construction Company on any claim or claims for labor, or supplies or materials or any other bill or expense of any nature that arises out of the job and contract with Dickerson, Inc., prior to paying out any money to Assignee herein (Emphasis supplied).” Thus, rather than limiting setoffs to the particular job *523 or project, the assignment also granted set-offs arising out of the contract itself. Accordingly, the terms of the contract (subcontract) become binding on all parties and the assignee then occupies the same position as the assignor, as described in Eno, supra.
There appears to be no dispute that if the terms of the subcontract under consideration were imposed on FDIC, then Dickerson would be entitled to its asserted set-off, since the subcontract expressly grants a setoff of all sums due Dickerson under any agreement or contract.
This conclusion is compatible with several other decisions involving assignment of contracts, i.e., George G. Tapper Co., Inc. v. Bank of Fort Walton, 117 So.2d 8, (Fla.App.lst, 1959), and Fred S. Conrad Construction Co. v. Exchange Bank of St. Augustine, 178 So.2d 217 (Fla.App.1st, 1965).
In Tapper, a subcontractor assigned to the bank all monies due it under its contract. The contractor furnished to the subcontractor for delivery to the assignee a letter, stating:
“Burkett-Howard, Incorporated, are sub-contractors to us on the Fort Walton sewer extension system and has requested that I forward all estimates due them under our sub-contract to your bank to be credited to their account.
“I wish to advise that I will comply with their request and all such estimates due them based on their subcontract will be forwarded to your bank.”
Then, after the contractor had deducted all sums due it under the subcontract, nothing remained for the assignee bank. The assignee brought suit to recover the amount of progress payment and won a judgment in the trial court. The District Court of Appeal reversed, stating:
“ * * * (I)t follows that the words employed in the letter, ‘due them based on their subcontract,’ in common parlance assume a special significance when considered in the light of the rule that the entire transaction, rather than isolated parts of it, must be taken into account in determining the over-all purpose and effect. Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 1922, 83 Fla. 501, 92 So. 279. So considering the entire transaction, we are forced to the conclusion that the letter amply identified the contract, that it hinged the commitment of the writer to the over-all provisions of the contract, that the ap-pellee-bank had advance notice of appellant’s prior and reserved rights under the contract, and that appellant’s commitment to appellee rendered it liable to the latter only to the extent of the balance, if any, of the progress payments (‘estimates’) after appellant had deducted therefrom the amounts payable to the appellant under the quoted provision of the contract.”
Of similar import is the Conrad case, where the District Court of Appeal sustained the right of a contractor to set off against an assigned subcontract pledging “All sums due or to become due Clement A. Solana under its contract . . . dated April 15, 1963.” There, the court held:
“It is fundamental that the assignee of a contract or non-negotiable chose in action occupies the same position as its assignor, and is subject to the same equities, conditions and defenses that could have been asserted against the assignor.

“Appellant’s acceptance of the assignment and agreement ‘to pay all sums due or to become due Clement A. Solana, under its contract ivith him’ (emphasis added) neither enlarged nor added dignity to appellee’s rights as assignee of the contract, a copy of which was made a part of the assignment given to the ap-pellee. Appellant’s commitment, therefore, was subject to the overall provisions of the subcontract with Solana in the same sense as the contractor in Geo. *524 G. Tapper Company, Inc. v. Bank of Fort Walton, supra.”
In Tapper and Conrad, the losses giving rise to the setoffs arose through defaults in-the contract. Sub judice, the loss arose through default of a second contract, nonperformance of which gave rise to a setoff under the express terms of the assigned contract. Notwithstanding this distinction, the rationale is clear that the right of set-off exists by virtue of the assigned contract and its assignment agreement.
Sub judice, the assignment reserved the right to setoff against the “job and contract.” Words should be given their ordinary meaning. Obviously the “job” was that portion of the Emerson Street project to be completed by the subcontractor, and the “contract” was the written document, including all enforceable terms and provisions thereof, entered into between the general contractor (Dickerson) and subcontractor (Rowell). This “contract” allowed the setoffs claimed by Dickerson. If words are not to be afforded their common and ordinary meaning, then our courts would be permitted to read into contracts a latent purpose rather than the patent expression of the parties. Equally obvious from the context of the language used in this assignment is the conclusion that the word “contract” has a broader meaning than the word “job”. See Radabaugh v. Ware, 241 So.2d 738 (Fla.App.4th, 1970) wherein it is stated:
“A contract is a legal relationship creating obligations between two or more parties enforceable at law. Kislak v. Kreedian, Fla. 1957, 95 So.2d 510.”
In Kislak, our Court stated:
“The concept of a contract is one well ■ recognized in law. It is a legal relationship. It contemplates an agreement enforceable at law between two or more parties for the doing or not doing of some specific thing. A contract must create legal obligations. 1. Bouv. Law Diet., Rawle’s Third Revision, p. 658; 17 C.J.S. Contracts § 1, p. 310.”
Thus, Dickerson, Inc., is entitled to its asserted setoff for losses arising under the Columbia project. I would grant the writ of certiorari, quash the opinion of the District Court of Appeal and reverse and remand the cause for entry of judgment in favor of Dickerson in keeping with the views hereinabove expressed.
ERVIN, J., concurs.